CUTCHER *et al. v.* CRAWFORD *et al.,* commissioners.

1. A minority report signed by a senator and appearing in the senate
    journal which, in effect, states that notice of the introduction of a
    given bill had not been published and that the advocates of the bill

admitted that no notice had been given that this bill was to be introduced, is not, after its passage, competent evidence to prove that no notice of the introduction of such bill had been published. An act of the General Assembly can not be invalidated in this manner.

2. Nor is a certified copy from the office of the secretary of State, of the consolidated return of an election held in a given county upon the question of removing the county-site thereof, admissible in evidence for the purpose of showing that the General Assembly, in acting upon a bill providing for such removal, did not have before it legal evidence showing that such an election had been held and that two thirds of the qualified voters thereat voted in favor of a removal of the county-site to a particular place.

Argued June 15, — Decided July 23, 1898.

Equitable petition.  Before Judge Gober.  Fannin superior court.  October term, 1897.

*Dorsey, Brewster & Howell, Hugh M. Dorsey, Sanders Mc-Daniel* and *Phillips & Brown,* for plaintiffs.

*Clay & Blair, Dupree & Hall* and *Thomas Hutcherson,* contra.

LUMPKIN, P. J.  On December 13, 1895, the General Assembly passed an act to change the county-site of Fannin county from Morganton to Blue Ridge.  Acts of 1895, p. 420.  The preamble of this act recites that on the 13th day of August, 1895, an election was held in that county for the purpose of changing the county-site, and that "at said election so held two thirds of the legal votes cast at said election were in favor of the removal of said county-site from the town of Morganton to the town of Blue Ridge, in said county."  Certain citizens and taxpayers of the county brought an equitable petition against the county commissioners to enjoin them from building a jail for the county in Blue Ridge.  This petition was predicated upon two grounds:  First, because the above-mentioned act was unconstitutional, for the reason that it was "a local bill, and notice of the intention to introduce said bill, as required by the constitution of the State, was not given nor published in the locality affected by such bill," and, second, because "less than two thirds of the votes cast at said election were in favor of removal of said county-site, as the consolidated returns of said election showed."  The injunction was denied, and the plaintiffs excepted.

1. At the hearing they offered in evidence an official copy of the senate journal of 1895, containing the following: "Mr. Cumming, of the Eighteenth District, member of the Special Judiciary, submitted the following minority report. Mr. President: The undersigned dissents from the report of the Special Judiciary Committee on House bill No. 730, by Mr. Mc-Daniel of Fannin, in reference to changing the county-site of Fannin County, which was favorable to the passage of the bill; and recommends instead that the bill do not pass, for the reason that in the opinion of the undersigned this is a local bill, and there is no evidence that notice thereof was given as prescribed by the Constitution and statutes, but on the contrary, it was admitted by the advocates of the bill that no notice was given that this bill was to be introduced. Respectfully submitted, [Signed] Bryan Cumming." This evidence was properly rejected. Its purpose was to show that no notice of the bill to change the county-site of Fannin county had been published. We do not think an act of the General Assembly can be invalidated in this manner. At most, the report was nothing more than a statement by Senator Cumming that, in his opinion, this was a local bill notice of the introduction of which had not been duly given. Surely, it would never do to declare void an act of the legislature upon the strength of anything contained in a minority report which was overridden by that branch of the General Assembly to which it was presented. Presumably, the senate by a majority of two thirds differed with the distinguished senator from the 18th, as to the conclusions expressed in his minority report; and if this be so, it makes no difference, so far as relates to the present controversy, whether, in point of fact, he was right or wrong. The action of the senate must be accepted as conclusive. The statement that "it was admitted by the advocates of the bill that no notice was given that this bill was to be introduced" can not be made a ground for invalidating the act. Courts can not act upon admissions, no matter by whom made, in passing upon the constitutionality of statutes. See *Fullington* v. *Williams,* 98 *Ga.* 809, and authorities there cited. Disregarding the recitals of this report, as we are constrained to do, we have nothing from the senate journal showing

whether notice was or was not given. This being so, the presumption is that the General Assembly did not disregard the constitutional requirements as to publication, if, indeed, these requirements are applicable to a bill of this kind. See 23 Am. & Eng. Enc. L. 199 et seq.

2. In support of the other ground upon which the petition was founded, the plaintiffs offered in evidence a transcript from the office of the secretary of State, of the consolidated return of the election held in Fannin county upon the question of removing the county-site. That return purported to show that the vote stood as follows: " For removal to Blue Ridge, received 947; for removal to Mineral Bluff, received 155; against removal, 396." If these figures are correct, it is, of course, obvious that two thirds of the qualified voters of the county voting at the above-mentioned election did not cast their ballots in favor of the removal of the county-site to Blue Ridge; and if this be true, the provisions of par. 4, sec. 1, art. 11 of the constitution (Civil Code, § 5927) were not complied with. But the transcript from the office of the secretary of State, even if its introduction in evidence had been permitted by the court, would not have shown upon what evidence the General Assembly acted in passing upon the question whether or not the removal provided for by the act had been duly authorized by the people at the polls. It is not to be presumed that the General Assembly would have passed this act unless satisfied in some way that the proposal to remove the county-site to Blue Ridge was in popular election carried by the requisite constitutional majority. We are not officially informed from what source the General Assembly sought or obtained the evidence relating to this matter upon which it acted. We are not even informed that any certificate at all from the secretary of State, or any transcript of the return on file in his office, was laid before or considered by the General Assembly. If such evidence was before it, we are bound to conclude that the same was not satisfactory, and that in some other way, or by some other means, it became convinced that two thirds of the legal voters voting at the election cast their ballots in favor of the removal of the county-site to Blue Ridge. It is not our province to inquire whether or not the General

Assembly had authority to make an investigation for itself upon this question. It is enough for us to know that the present record does not disclose that the General Assembly acted upon illegal or insufficient evidence in reaching the conclusion that the result of the election warranted the enactment of a law changing the county-site. Nor would the rejected transcript, even if it had been received in evidence, have shown that the action of the General Assembly in passing this law was unconstitutional.

Section 394 of the Political Code, which relates to elections of this kind, declares that " the certificate of the secretary of State showing that said election was held and that two thirds of the qualified voters of said county (as indicated by the tax digest) voted at said election in favor of 'removal,' shall be sufficient evidence of the holding of said election and the number of votes cast." In *Wells* v. *Ragsdale,* 102 *Ga.* 53, it was held that in so far as this section undertook to require the assent of two thirds of the qualified voters of the county, it was violative of the constitution, which only required the assent of two thirds of those voting at the particular election. Dealing with this section as construed in the case just cited, a certificate from the secretary of State showing that two thirds of those voting at an election upon the question of removing a county-site voted in favor of removal would be sufficient evidence as to the facts therein recited. It will be observed that the secretary of State is not required to furnish the General Assembly with a transcript of the return of the election made to him, but it would seem lawful for him to state in a certificate the result of the election; and again, it will be noticed that while such a certificate is sufficient evidence as to the facts, the law does not say that it shall be the exclusive evidence to be acted upon by the General Assembly. We do not know, as already remarked, whether the secretary of State furnished a certificate of any sort to the General Assembly in the present instance, or, if he did, what the certificate contained; and we repeat that the transcript offered in evidence and rejected was not relevant or admissible for the purpose of contesting the constitutionality of the law under review.

The trial judge committed no error at the hearing, and properly denied the injunction.

*Judgment affirmed.    All the Justices concurring.*