## VORNBERG *et al. v.* DUNN, commissioner, *et al.*

1. Where certain citizens of a county, representing themselves to be "registered voters and poll-tax payers" of the county, petition the "ordinary" of the county to call an election and submit to the people of the county the question of the removal of the county-site to a named town in the county, the notice is not void because it is directed to the "ordinary" of the county, instead of to the "court of ordinary."

2. The calling of the election by the "ordinary," as authorized by the statute, determined at least prima facie that the petitioners were of the class and were of a sufficient number as required by the statute for the purpose of calling an election at which the question of the removal of the county-site to a named town within the county should be voted upon.

3. Where such an issue as set out in the preceding headnotes has been submitted to the people to vote upon, and the result has been declared by the ordinary of the county, and an appeal as provided for by statute is made to the secretary of State, who certifies his findings to the legislature, and that body enacts that the removal of the county-site be had in accordance with the findings of the secretary of State, and the preamble of the act recites that two thirds of the legal voters of the county have voted in favor of such removal, the enrolled act of the legislature, reciting the facts necessary to authorize the removal, will be held to have conclusively determined that the election resulted in two thirds of the legal voters of the county favoring the removal, as required by statute.

4. The tax levy in this case was not shown to be excessive.

5. The court did not err in refusing an injunction.
FEBRUARY 10, 1915.

Petition for injunction. Before Judge Fite. Murray superior court. October 17, 1914.

*W. W. Sampler* and *Hendricks & Hendricks,* for plaintiffs.

*W. C. Martin, W. E. Mann, J. M. Sellers, H. H. Anderson,* and *Little, Powell, Hooper & Goldstein,* for defendants.

HILL, J. The legislature of this State in 1913 (Acts 1913, p. 423), after reciting that "Whereas heretofore, on the 19th day of August, 1912, a petition was filed with the ordinary of the County of Murray, and State of Georgia, signed by two fifths of the registered voters, as shown by the registration list last made out in and for said county, asking for an election to be held in said County of Murray for the purpose of changing and removing the county-site of said county from the Town of Spring Place to the Town of Chatsworth, in said county; and whereas, on the said 19th day of August, 1912, the ordinary of said County of Murray, upon the due consideration of said petition so filed with him, did pass an order for an election to be held in the various militia districts of said county, on the 30th day of September, 1912, for the purpose of changing and removing the county-site of said county, as asked for by petitioners, which said order was duly published in the Murray News, the newspaper in which the sheriff of said county publishes his legal notices, as provided by section 486 of Volume 1 of the Code of 1910; and whereas, on the 30th day of September, 1912, said election was held in said county for the purpose of changing said county-site, in accordance with said order from said ordinary, and at said election so held there were 862 votes for removal to Chatsworth and 427 votes for removal to Eton, and 155 votes against removal; and whereas afterwards said election was contested, contesting the right of the votes cast for removal to Eton to be counted, on the ground that said election was called for removal to Chatsworth, said contest being heard by the Secretary of State; and whereas the Secretary of State decided said contest as follows: that there were 1017 legal votes cast in said election, 862 for removal to Chatsworth, and 155 votes against removal: now, therefore," enacted that the county-site of Murray County be removed from Spring Place to the Town of Chatsworth in the County of Murray. In pursuance of this act of the legislature, and by virtue thereof, the board of county commissioners of Murray county did, on the first day of September, 1914, in addition to the general tax levy, order that there be assessed, levied, and collected a special tax of sixty cents on the one hundred dollars of all taxable property in the County of Murray for the year 1914, as a jail fund to be used in erecting a new jail for that county at Chatsworth. The commissioners also adopted an order, on the 10th day of Septem-

ber, 1914, inviting sealed proposals for the erection and completion of a jail building, to be located on the new court-house square in the Town of Chatsworth. It was provided that the building should be commenced on or before the 15th day of October, 1914, and should be completed on or before November 30, 1914, at a cost not exceeding $12,000. Certain details of the specifications and the time when payments should be made were set out, which it is not necessary here to recite.

Upon the levy of this special tax, F. E. Vornberg and C. W. Brown brought their petition against D. R. Dunn, J. A. McGhee, and T. H. Hemphill, as commissioners of roads and revenues of Murray county, seeking to enjoin them from opening, accepting, receiving, or approving bids from any contractor, or contracting with such, for the purpose of the erection of the jail building as contemplated; and that T. P. Ramsey, the tax-collector of Murray county, be enjoined and restrained from collecting the tax levy of sixty cents on the one hundred dollars to be used as a fund for erecting the jail as proposed. It was prayed: (a) That the call of the election to remove the county-site from Spring Place to Chatsworth, and all subsequent proceedings in furtherance of the call, and the election held in pursuance thereof, be declared illegal and void, as being in violation of art. 11, sec. 1, par. 4, of the constitution of the State, as embodied in the Civil Code (1910), § 6597, which provides that "No county-site shall be changed or removed, except by a two-thirds vote of the qualified voters of the county, voting at an election held for that purpose, and a two-thirds vote of the General Assembly." (b) That the act of 1913, cited supra, be declared illegal and void, as being in violation of the same provision of the State constitution above quoted, and for the further reason that the bill which the legislature sought to enact was neither in whole nor in part read three times, on three separate days, in the Senate and House, as required by art. 3, sec. 7, par. 7, of the constitution of Georgia. At the conclusion of the interlocutory hearing the court refused the injunction, and granted a supersedeas as to the collection of the jail-fund tax, upon the plaintiffs giving a good and sufficient bond to be approved by the clerk of the superior court of Murray county, payable to the defendants, to answer and pay all damages that may be sustained in consequence of delay incident to the prosecution of the case. To this judgment the plaintiffs excepted.

8

1.　Section 486 of the Civil Code, as amended by the act of 1911 (Acts 1911, p. 54), so far as pertinent to the present case, is as follows: "Whenever two fifths of the electors qualified to vote for members of the General Assembly (as shown by the registration list last made out) of any county of this State shall petition the ordinary for the removal or change of the county-site of said county, said ordinary shall at once grant an order directing an election to be held at the various precincts in said county, not less than forty, nor more than sixty, days thereafter." The petition asking the ordinary to call an election for the purpose of voting on the question of removal of the county-site from Spring Place to Chatsworth was addressed "To the Honorable Ordinary of Murray County." It is insisted that this petition is void for the reason that it is addressed to the "Ordinary" of Murray county, instead of to the "Court of Ordinary" of Murray county, and that therefore no legal call for an election was made. This contention is without merit, as a glance at the above-recited code section will show. The voters of Murray county were strictly within their rights when they followed the exact language of the code and addressed the petition to the "Ordinary" instead of to the "Court of Ordinary."

2.　It is further insisted that the submission by the ordinary to the voters of Murray county was void, because it was signed by poll-tax payers instead of by electors qualified to vote for members of the General Assembly. The petition recited that "We, the under-signed *registered voters* and poll-tax payers of Murray county, respectfully petition your honor to call an election in said county," etc. Subsequently the ordinary issued the notice of election to the voters of Murray county, as required, wherein it was stated that a petition had been filed by two fifths of the poll-tax payers of the county; and that "All persons qualified to vote in other elections are qualified to vote in this election, and the election shall be held at all the precincts in said county. Said election shall be held and conducted and return made as provided by law." It is insisted: (1) That the election notice, order, and judgment of the ordinary are illegal and void, because, being a court of record, its ordinary determined that the election was called on a petition signed by two fifths of the poll-tax payers of Murray county; whereas the law, on the date of the issuance of the notice of election, judgment, and order of the ordinary, required two fifths of the electors qual-

ified to vote for members of the General Assembly, as shown by the registration list, made out preceding the call of the election for the county-site removal, of the qualified voters of the county. (2) That the notice of election, order, and judgment of the ordinary called an election to remove the county-site from Spring Place to Chatsworth, thereby limiting the privilege of the voters and requiring them to vote as between Spring Place and Chatsworth only, thereby prohibiting all of the qualified voters of the county from exercising their unrestricted choices as to any place or preference in the county for removal other than to Chatsworth. (3) That, on the petition and notice of election, an election was held and 155 legal votes were cast against removal and 527 legal votes were cast for removal to Eton, a town in the county of Murray, and 862 legal votes were cast for removal to Chatsworth, a town in the county of Murray; and that neither Eton nor Chatsworth received a two-thirds majority of the votes cast in the election, and for this reason any attempt to declare the election legal and remove the court-house from Spring Place to Chatsworth is unconstitutional and void, as being in violation of the State constitution (Civil Code, § 6597), quoted above. The election resulted in the filing of a contest and objections to the election before the Honorable Philip Cook, Secretary of State, who, after taking testimony in the case, found that "the petition and order provided only for submitting the question to the voters as to changing the county-site from Spring Place to Chatsworth. This was the only question by the petition which the ordinary had jurisdiction to pass upon, and the only question which by his order he did pass upon and submit in the election. This being true, all votes cast for Eton are illegal, because under the petition and order there was no provision for voting for other than against removal and for removal to Chatsworth. . . I find' that in an election held September 30th, 1912, in the County of Murray, for the removal of the county-site to Chatsworth that there were cast 1017 legal votes, 155 legal votes against removal and 862 votes for removal to Chatsworth." This finding of the Secretary of State is also assailed as being in violation of the provision of the constitution above quoted. It was certified to the General Assembly of the State, to the effect that two thirds of the legal votes cast in the election were in favor of removal to Chatsworth; and the legislature passed the act as recited above, removing the county-site from Spring Place to Chatsworth.

The calling of the election by the officer authorized by the statute determined at least prima facie that the applicants or petitioners for the order calling for an election for the removal of the county-site were of the class and were of a sufficient number as required by the statute in such cases. See *Barrell* v. *Ashmore*, 137 *Ga.* 545 (73 S. E. 825).

3. According to the ruling in *Culcher* v. *Crawford*, 105 *Ga.* 180 (31 S. E. 139), the enrolled act of the legislature of 1913 conclusively determined that the election for the removal of the county-site from Spring Place to Chatsworth was held as provided by law, and that it resulted in two thirds of the voters favoring the removal from Spring Place to Chatsworth. That was a case where the General Assembly passed an act to change the county-site of Fannin county from Morganton to Blue Ridge (Acts 1895, p. 420). The preamble of that act recites that on the 13th day of August, 1895, an election was held in that county for the purpose of changing the county-site, and that "at said election so held two-thirds of the legal votes cast at said election were in favor of the removal of said county-site from the Town of Morganton to the Town of Blue Ridge, in said county." An equitable petition was filed by certain citizens and taxpayers against the county commissioners, to enjoin them from building a jail in Blue Ridge for the County of Fannin. We think the decision in the *Culcher* case, which decides that it is to be presumed that, before passing the act changing the county-site, the legislature ascertained that the place to which it was changed had received the necessary majority of the votes cast at the election to determine that question. This court was requested to review and reverse the decision in that case, and other cases in which a like ruling was made. As that decision was made by the entire bench of six Justices, and the present case is decided by less than the entire bench (one member being absent on account of sickness), it could not be overruled, although some members of the court may not be satisfied with the reasoning contained in that opinion. This also renders it unnecessary to discuss the question of whether there is a difference between a location of a county-site, in which there may be a choice between various places, and a removal of a county-site from one particular place to another, relatively to the question of whether there must be a specified majority of the votes cast for all places, or a majority of those cast for the two competing places.

4. The other assignment of error is that in levying the tax of six mills on all of the taxable property in Murray county, which amounts to $2,659,620, there will be raised the total sum of $15,-957.72; whereas the proposed jail building, when completed, is not to exceed a cost of $12,000, and that the county commissioners have no right or authority to raise a sum greater than will be necessary to complete the building. This tax levy, as shown by the answer, is not so excessive as to be void. Some margin may be allowed for uncollected taxes, which is always the case, and for commissions of the tax-collector, etc. We can not say, as a matter of law, that the margin is too great for these purposes.

5. Upon a review of the whole case, we think the court was right in refusing an injunction.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*