## BACHLOTT *et al.* v. BUIE *et al.,* commissioners.

1. The act of August 11, 1923 (Ga. Laws 1923, p. 218), which removed the county-site of Camden County, is not unconstitutional and void on the ground that the General Assembly was without constitutional power to pass it, by reason of the fact that the Secretary of State, in deciding a contest of the election held on the question of such removal, found that two thirds of the qualified voters of the county had not voted in favor of the removal.

2. This court is bound to conclude that the finding of the Secretary of State was not satisfactory to the legislature, and that from its own investigation and review of the proceedings and evidence in the contest case, or by some other means, it became convinced that two thirds of the legal voters voting at the election cast their ballots in favor of the removal.

3. "A duly enrolled act, properly authenticated by the regular presiding officers of both houses of the General Assembly, approved by the Gov-

45

ernor, and deposited with the Secretary of State as an existing law, will be conclusively presumed to have been enacted in accordance with constitutional requirements."

No. 4088. APRIL 16, 1924. REHEARING DENIED SEPTEMBER 20, 1924.

Petition for injunction. Before Judge Highsmith. Camden superior court. November 3, 1923.

*A. H. Davis* and *S. C. Townsend,* for plaintiffs. *S. F. Memory* and *J. D. Blalock,* for persons at interest, not parties of record.

*Conyers & Wilcox,* for defendants.

HINES, J. An election was held in Camden County upon the question of the removal of the county-site from St. Marys. On the face of the returns the election was in favor of the removal of the county site to Woodbine. The election was contested. On the hearing of this contest the Secretary of State found that two thirds of the qualified voters of the county had not voted in favor of the removal of the county site from St. Marys to Woodbine; and he certified by written certificate that two thirds of the qualified voters of the county had not voted in favor of the removal. Notwithstanding said finding and certificate, the legislature passed the act of August 11, 1923, removing and changing the county site of Camden County from St. Marys to Woodbine. Ga. Laws 1923, p. 218. This act recites that "An election has been duly and legally held in Camden County for the removal of the county-site of said county, and at said election by a majority of more than two thirds of the qualified voters of said county voting at said election it was voted that the county site of said county should be removed from St. Marys to Woodbine in said county." In pursuance of said act the county commissioners of said county were preparing to remove said county-site, when certain citizens and taxpayers thereof filed their petition to enjoin them from expending the funds of said county in so doing, on the ground that said act of the legislature was unconstitutional and void, because the legislature was concluded by the judgment of the Secretary of State, rendered in said contest of said election, finding that two thirds of the qualified voters of the county had not voted in favor of said removal; and could not go behind said judgment, make an independent investigation of its own, and reach a finding contrary to that of the Secretary of State.

1, 2. The controlling question in this case is this: Is an act

of the General Assembly, which removes a county-site, unconstitutional and void because it was passed contrary to the finding of the Secretary of State, in a contest of the popular election for such removal, that two thirds of the qualified voters at such election had not voted in favor of the removal? This question has been decided in the negative by this court. *Cutcher* v. *Crawford,* 105 *Ga.* 180 (31 S. E. 139) ; *Lee* v. *Tucker,* 130 *Ga.* 43 (60 S. E. 164) ; *Vornberg* v. *Dunn,* 143 *Ga.* 111 (84 S. E. 370). What is the gist of the decision in *Cutcher* v. *Crawford?* The legislature passed an act to remove the county-site of Fannin County from Morganton to Blue Ridge. The act recited, that an election had been held for changing the county-site, and that two thirds of the legal voters at said election had voted in favor of the removal. A petition was filed to enjoin the removal, on the ground that "less than two-thirds of the votes cast at said election were in favor of removal of said county-site, as the consolidated returns of said election showed." At the hearing of the application for injunction a certified copy, from the office of the Secretary of State, of the consolidated returns of the election held upon the question of the removal was offered for the purpose of showing that two thirds of the qualified voters at such election had not voted for the removal of the county-site. This evidence was rejected by the trial judge. This court affirmed that ruling. Why? Because "the transcript offered in evidence and rejected was not relevant or admissible for the purpose of contesting the constitutionality of the law." In the opinion in that case it was said: "If such evidence were before [the legislature], we are bound to conclude that the same was not satisfactory, and that in some other way, or by some other means, it became convinced that two thirds of the legal voters voting at the election cast their ballots in favor of the removal." This clearly means that the General Assembly was not bound by the result reached by the Secretary of State. It is true that the act of removal in that case was passed prior to the act of 1897, which provides for the contest of elections held for the purpose of removing county-sites. But for this fact, the decision in that case is controlling in this case. Does that fact alter the situation? This question came before this court again in *Lee* v. *Tucker,* supra, where the ruling in *Cutcher* v. *Crawford* was followed; and this court said: "Nor is the law changed in this regard by the act

approved November 9, 1897 (Acts 1897, p. 87), providing for a contest of such elections before the Secretary of State." In *Lee* v. *Tucker,* this court had under consideration the act of August 19, 1907 (Acts 1907, p. 307), removing the county-site of Irwin County from Irwinville to Ocilla. There was a contest of the election for the removal of the county-site; and it was pending and undecided. Notwithstanding this fact, that "act was introduced, passed by the Senate, and read in the House the first and second time, before the Secretary of State had made a finding upon the contest filed before him of the election" held on the question of the removal of the county-site. It was contended, in that case, that the legislature was without power to pass a removal act until the Secretary of State had decided the contest of the election. This court held the contrary. In effect it held that the legislature could act independently of the Secretary of State, and contrary to any finding he might make in the contest proceeding. It is true that the Secretary of State, in deciding this contest, finally found, as the legislature had determined, that the necessary two thirds of the votes were cast in favor of removal; and learned counsel for the plaintiffs contend that this fact differentiates that case from the one at bar. But this court rested its decision, not upon that fact, but upon this principle: "If, in Georgia, the courts have any such power to pass upon such a question of fact, it is at least clear from the rulings heretofore cited that they can consider no evidence outside of the journals of the two houses of the General Assembly; and unless they show affirmatively that the legislature acted in the face of, or contrary to, a constitutional prohibition, it will be conclusively presumed that it did not so act."

3. But this court has gone still further. It has ruled that even the journals of the two houses of the legislature are not admissible for such purpose. "A duly enrolled act, properly authenticated by the regular presiding officers of both houses of the General Assembly, approved by the Governor, and deposited with the Secretary of State as an existing law, will be conclusively presumed to have been enacted in accordance with constitutional requirements." *Dorsey* v. *Wright,* 150 *Ga.* 321 (103 S. E. 591). This being so, an act removing a county site will be conclusively presumed to have been passed in conformity to constitutional re-

quirements. It is said that this conclusion will leave the people of a county at the mercy or caprice of the legislature. They are not without the protection which comes from the fact that the members of the General Assembly are sworn to uphold and defend the constitution of this State. We cannot presume that they will violate the provision of that instrument which requires that two thirds of the legal voters of a county, at an election held for that purpose, shall cast their ballots in favor of removal, before the General Assembly can pass an act of removal.

2. The above ruling disposes of the merits of this case adversely to the plaintiffs in error; and it becomes unnecessary to consider any other questions raised in the record or discussed by counsel in their briefs.

*Judgment affirmed. All the Justices concur, except Atkinson, J., disqualified, and Russell, C. J., dissenting.*

### ON MOTION FOR REHEARING.

HINES, J. 1. In the motion for a rehearing in this case it is alleged that this court overlooked the cases of *Dougherty* v. *Bethune,* 7 *Ga.* 90, and *Mitchell* v. *Lasseter,* 114 *Ga.* 275 (40 S. E. 287). We did not overlook these cases, but we did not specifically deal with them, being of the opinion that the ruling made sufficiently answered the contention that the decisions in those cases were controlling in the present case. In the case first cited this court said: "The legislature has no power to legislate the truth of facts. Whether facts upon which rights depend are true or false is an inquiry for the courts to make under legal forms; it belongs to the judicial department of the government." In that case private and not public rights were involved. In the case last cited this court was dealing with a public statute, being the act of 1879 (Acts 1878-1879, p. 409), which provided "that the county authorities of Wilcox County shall locate the site of Wilcox County at some central and convenient place in said county, as is prescribed in the third section of the act of the 22d day of December, 1857, that created the County of Wilcox, and that the court-house shall be erected at the site selected by the county authorities." In that case the application was "by certain residents and taxpayers of Wilcox County, to enjoin the board of county commissioners of that county from removing the county records from Abbeville to Rochelle and establishing the latter place as the

county-site of the county." In that case the injunction was sustained on the ground that the county-site had been located under the act of 1857, and the removal of the county records would involve the unlawful expenditure of the money of the taxpayers in the treasury of the county, or the creation of an unlawful indebtedness by the county. This court held that "Recitals of fact in a public statute are not conclusive upon the courts, but evidence may be introduced to disprove them." It may be said that the application for injunction in the instant case rests upon the same ground as that involved in the case last cited; namely, the expenditure of the money of the taxpayers of the county in the treasury in unlawfully removing the county-site from its present place, or in the creation of an unauthorized indebtedness. We will deal with the distinction between that case and the one in hand later on. There are other cases in which this court deals with this question, as in *Beall* v. *Beall,* 8 *Ga.* 210 (legitimating certain children of their reputed father), *Thornton* v. *Lane,* 11 *Ga.* 459 (involving the right of a party to attack a judgment rendered against one who was declared by an act of the legislature to be the assignee of a bank), and *Lane* v. *Harris,* 16 *Ga.* 222. There may be other cases decided by this court which bear upon this subject. All the cases cited deal with private rights which depend upon the existence or non-existence of the facts recited in the particular acts dealt with, except the case of *Mitchell* v. *Lasseter,* supra, which can be distinguished from the statute under consideration. We think that parties are not estopped to deny facts recited in legislative acts, when such facts affect their rights, or where the right of the legislature to enact a law does not depend upon the existence of the facts recited. In such cases the recital of facts is prima facie true, but not conclusive. When, however, the right of the legislature to enact a law, touching matters purely legislative or political, depends upon the existence of facts, and the enrolled act recites the existence of such facts, the act not impairing or destroying private rights, the recital in the act of the existence of such facts, being necessary to enable the legislature to pass the law, is conclusive and binding and cannot be traversed. Whether the above view is correct or not, the complete reply to the contention that the recital in an act for the removal of a county-site, to the effect that the requisite vote for removal had been cast at

an election held on the question of removal, is not conclusive of the existence of such fact, is that this court has held that the recital of such fact in an act authorizing the removal of such county-site is conclusive upon the judicial department of the government. *Cutcher* v. *Crawford,* 105 *Ga.* 180; *Lee* v. *Tucker,* 130 *Ga.* 43; *Vornberg* v. *Dunn,* 143 *Ga.* 111. The decisions in two of the cases cited were by full benches of six Justices; and under the constitution of this State they are declared to be law until reversed by a full bench of six Justices.

The principle recited in those cases is in accordance with prior decisions of this court. In construing a provision of our State constitution requiring the publication of notice of the intention to ask local legislation as a preliminary to the passage of a local bill, this court held that the question of the preliminary advertisement of such a bill was for the determination of the General Assembly before its passage (*Speer* v. *Athens,* 85 *Ga.* 49, 11 S. E. 802; *Peed* v. *McCrary,* 94 *Ga.* 487, 21 S. E. 232), and that "this court must determine that the requisite publication was made unless the contrary appears on the journals of the legislature." *Chamlee* v. *Davis,* 115 *Ga.* 266 (41 S. E. 691). In the above cases, dealing with the removal of county-sites, this court announced the doctrine that when the right to enact the law depends upon the existence of facts, it is the duty of the legislature before passing the bill, and of the Governor before approving it, to become satisfied in some appropriate way that the facts exist; but no authority is conferred upon the courts to hear evidence and determine as a question of fact whether these constitutional departments of the State government have properly discharged such duty.

2. It is next insisted that this court overlooked the decision rendered in the case of *Hammond* v. *Clark,* 136 *Ga.* 313 (71 S. E. 479, 38 L. R. A. (N. S.) 77). In that case it was held that the proclamation of the Governor of the State, to the effect that a proposed constitutional amendment had been duly submitted to the qualified voters of the State, and declaring that the amendment had been ratified, was not conclusive upon the courts. That case is distinguishable from the instant case. The constitution of this State makes no provision for the exclusive determination by the Governor of the question whether a constitutional amendment has been ratified by the people. In fact there is no provision in the

constitution for a proclamation by the Governor upon this subject. In a case of removal of a county-site, the legislature must necessarily determine the question whether or not the removal has been sanctioned by a popular vote before passing an act removing the county-site.

3. It is next insisted that in rendering the decision in this case this court overlooked the cases of *Woodard* v. *State,* 103 *Ga.* 496 (30 S. E. 522), and *Bowen* v. *Cliflon,* 105 *Ga.* 459 (31 S. E. 147). In the case first cited this court said: "Where a tribunal has been invested by law with power to declare the result of an election, the decision of such tribunal is conclusive, unless provision is made for a further review or contest in a manner prescribed;" and in the second case this court held that the act of 1897, which constituted the Secretary of State a special tribunal to hear and determine contests of elections for the removal of county-sites, is constitutional. This brings us to the further consideration of the controlling question in this case. That question is: Is the finding or judgment of the Secretary of State in a contest of an election held for the removal of a county-site conclusive and binding upon the legislature? The act of November 9, 1897, provides that an election for the removal of a county-site may be contested, and provides the method of contest. Civil Code (1910), §§ 490-501, inclusive. This act provides who may contest such election, for notice of intention to contest, its contents and service, designates the judicial · officer who may preside at the taking of testimony at such contest, and further provides who may resist such contest. The act then provides that "All papers and proceedings, or copies of them, duly certified by the presiding officer, must be transmitted . . to the Secretary of State, who shall hear and determine the same, after giving reasonable notice to contestants and contestees, . . or their counsel, of the time and place of hearing, and he shall enter upon his finding in writing and consider said contest proceedings and his judgment thereon in connection with the returns of said election, and certify by written certificate the number of legal votes properly and legally cast at said election for removal, and to what place, and the number of legal votes properly and legally cast against removal. The Secretary of State shall keep on file and preserve all the papers in such contested cases, and transmit the same to the General Assembly

when required." Civil Code (1910), § 501. This statute does not declare that the finding or judgment of the Secretary of State shall be binding and conclusive upon the legislature. He is not invested by this statute with power to declare the result of the election. The statute refers to his finding as "his judgment thereon in connection with the returns of said election." He is required to "certify by written certificate the number of legal votes properly and legally cast at said election for removal, and to what place, and the number of legal votes properly and legally cast against removal." That is all that he is required to do in disposing of the contest. This certificate "shall be sufficient," but not conclusive "evidence of the holding of said election and the number of votes cast." Civil Code (1910), § 489. The act then requires that "the Secretary of State shall keep on file and preserve all the papers in such contested cases, and transmit the same to the General Assembly when required." Why is he required to preserve all the papers in such contested cases and transmit the same to the General Assembly when required? If his finding were final and conclusive upon the legislature, the legislature would have no use for all the papers in the contested cases. Evidently the purpose of the preservation and transmission of these papers to the legislature is to permit that body to finally determine for itself whether in fact the requisite number of votes cast at said election were in favor of removal of the county site. Under the constitution the duty of ascertaining this fact rests upon the legislature. Before it can be held that the legislature placed this burden upon the Secretary of State and that it is bound by his finding or judgment, such construction must clearly and unequivocally appear in the statute authorizing the contest. Whether the General Assembly could so shift this burden presents a question of serious doubt.

Under this act we are of the opinion that the legislature intended to establish a special tribunal or instrumentality for the purpose of tabulating from the evidence produced on the contest the legal votes cast for removal and against removal, and to certify his finding to the legislature, which certificate, if it showed the requisite number of votes in favor of removal, would furnish sufficient evidence upon which the legislature could act in passing an act of removal; but such finding or certificate was not intended by this act to be final and conclusive upon the legislature. Anyway, this

was the construction put upon this act by this court in *Lee* v. *Tucker,* supra; and we think that the question was involved in that case and that the decision of this court on that point was not obiter dictum.                                   *Rehearing denied.*