WILLIAMS *v.* MACFEELEY, sheriff, *et al.*

146

No. 12363.   MAY 11, 1938.

*Shelby Myrick* and *Alex. A. Lawrence,* for plaintiff.

*Samuel A. Cann, solicitor-general,* and *Andrew J. Ryan Jr.,* for defendant.

GRICE, Justice. ■ The first question to be determined is whether or not the act approved February 16, 1938, which provides that the trial judge and not the jury shall fix the sentence in criminal cases, is violative of art. 5, sec. 1, par. 13, of the constitution of Georgia (Code, § 2-2613), which declares that no law shall be enacted at a called session of the General Assembly "except such as shall relate to the object stated in his [the Governor's] proclamation convening them;" the measure in question having been acted upon at the called, or extraordinary, session of the General Assembly convoked on November 22, 1937, under the proclamation of the Governor dated November 20, 1937. The proclamation recited that the General Assembly was called in extraordinary session "for the purpose of considering and enacting laws and resolutions, by revision, repeal, amendment or otherwise, relating to all the following subjects, which are considered by the Executive of sufficient importance to make the necessity for such extraordinary session, to wit" (among other subjects enumerated) : "Laws fixing and imposing sentences in criminal cases; and probation of persons convicted." The caption of the bill under attack is as follows: "An act to provide that in all criminal trials, except when defendant enters a plea of guilt, the jury shall pass only on the guilt or innocence of the accused; to provide that the trial judge shall fix sentence in cases of conviction or plea of guilt; to provide that the said judge shall make investigation before passing sentence; to authorize and empower the trial judge, to suspend sentence; to fine, or probate defendant; to provide an effective date for this act; and for other purposes." Section one is as follows: "Section 1. In all criminal trials, whether misdemeanor or felony,

wherein the defendant does not enter a plea of guilt, the jury shall pass only on the question of the guilt or innocence of the accused; and it shall be the duty of the trial judge to fix sentence as provided by law, upon the conviction or plea of guilt of the defendant." Section 3 of the act in express terms gives the judge the right to place the defendant on probation. Since the General Assembly's only limitation.as to the power to legislate at a called session is that no law shall be enacted except such as shall relate to an object stated in the proclamation of the Governor convening the same, the question is narrowed to this: Is an enactment which makes it the duty of the trial judge to fix the sentence in criminal cases, and gives him the power to place the defendant on probation, related to the following object, to wit: "Laws fixing and imposing sentences in criminal cases; and probation of persons convicted?" We do not think that the quoted portion of the Governor's call has to be at all strained, as contended by counsel, in order to apply it to the subject matter of this bill. The one is definitely related to the other. The act is not violative of art. 5, sec. 1, par. 13 of the constitution of this State.

■ The second question is, whether or not the plaintiff will be allowed, for the purpose of showing its invalidity, and to impeach the entries thereon, to go behind the enrolled copy of the act in question, deposited with the Secretary of State, and now on file in his office, the same showing on its face that it was passed by both the Senate and the House by the requisite constitutional majorities, bearing the signatures of the Secretary of the Senate and of the Clerk of the House to that effect, and also bearing the authenticated signatures of the President of the Senate and the Speaker of the House, and the approval and signature of the Governor. The case was tried on an agreed statement of fact. While by taking the words literally the said statement, which was signed by the solicitor-general and counsel for petitioner in the habeas-corpus proceeding, might be said to mean, as stated, "that the following facts are true," they will not be given that meaning, because the written agreement also contains the following stipulation: "In consenting to this agreed statement of fact, it is understood that the solicitor-general of the Eastern Judicial Circuit insists that the court has no right to go behind the enrolled copy of the act in question and the legality of the detention of the plain-

tiff in this case, and that a bill signed and authenticated, such as this, produces a conclusive presumption as to its legality. The agreement of the solicitor-general hereto shall not prejudice his right to contend that the act in question can not be impeached or derogated by proof of facts which transpired prior to the deposit of the enrolled bill with the Secretary of State, signed by the Governor." In view of the above, and of the manifest purpose of the stipulation, we shall treat the record as in effect an agreement that, if permitted so to do, petitioner could satisfy the court that he could support by undisputed proof the statements of fact set forth in the agreement signed by counsel, the State's counsel at the same time insisting that the court had no power to give effect to proof as to what did or did not transpire before the deposit of the enrolled bill with the Secretary of State, signed by the Governor. Even if the stipulation were treated as an unqualified agreement, we could not act on it as such. In passing on the constitutionality of statutes, courts can not act upon the admission of the parties. "'Facts may be admitted by parties to suits, but the law can not be made or abrogated by agreement.' A statute 'can not be declared to be law or not law at the option of the litigants.'" *Fullington* v. *Williams,* 98 *Ga.* 807 (27 S. E. 183), and cit.; *Cutcher* v. *Crawford,* 105 *Ga.* 180, 182 (31 S. E. 139), note in 40 L. R. A. 33, and cit.

■ The plaintiff seeks to impeach the validity of the bill in several ways: By the Journal of the House of Representatives, by a photostatic copy of the Senate bill, on which appears a statement from the chairman of the House committee to whom the bill, when it came from the Senate, was referred, to the effect that it was reported back to the House with an adverse recommendation; by aliunde evidence that before the bill could have been considered by the House at all, it would have been necessary to disagree to the report of the committee, and this was never done; by the same kind of evidence that the bill was in fact never read the third time in the House; that the reported action of the House in passing the bill by a vote of 103 to 0, purporting to be signed by the clerk, was in fact not placed there by the clerk or by his authority; and that the last sheet, containing the genuine signatures of the president and secretary of the Senate, and the speaker and clerk of the House, was placed there inadvertently. "The decisions in regard to whether

the journals of legislative bodies will be looked to for the purpose of invalidating an act of the legislature apparently regular on its face, and, if so, to what extent such journals may be considered, is one which has been productive of many decisions, and much conflict." *DeLoach* v. *Newton,* 134 *Ga.* 739, 743 (68 S. E. 708, 20 Ann. Cas. 342). To same effect, see 25 R. C. L. § 146; 59 C. J. § 184; and authorities cited in the note following the case of Atchison &c. Railway Co. *v.* Oklahoma, in 40 L. R. A. (N. S.) 1 (28 Okla. 94, 113 Pac. 921). There are some expressions used in certain opinions of this court which might imply that the journals of the General Assembly could be looked to for the purpose of invalidating an act. Several of these are adverted to by Fish, Chief Justice, speaking for a full bench in *DeLoach* v. *Newton,* supra, and on this subject he concludes: "Without citing all of the cases in this State on the subject, it may be said that in none of them has it been directly held that an act of the legislature, duly enrolled and signed, approved by the Governor, and deposited in the office of the Secretary of State, could be shown to be invalid by reason of entries or lack of entries on the journals touching the details of its passage, such as whether it was duly published, if a local act, or was read on three separate days in each house, or what was the vote on its passage."

In the *DeLoach* case it was contended that a certain act was unconstitutional on the ground that the House and Senate journals did not show that it was enacted in the manner prescribed by the constitution. This court ruled: "If an enrolled act of the legislature was duly signed by the President of the Senate and the Speaker of the House and approved by the Governor, and deposited in the office of the Secretary of State, it was not competent to attack its validity on the ground that the legislative journals showed that the bill originated in the House, was there passed by a constitutional majority and transmitted to the Senate, where it was amended and passed by a constitutional majority, and then transmitted to the House, where the Senate amendment was concurred in, but failed to show that this was done by a constitutional majority." The Chief Justice observed that it is at best a matter of delicacy for the courts to go into the details of legislative procedure, critically examining the methods of a coordinate department of the government, and declaring that its

members have failed or refused to obey constitutional directions or commands as to the manner in which they should perform their duties, because of the entry, or the absence of an entry, on the journal kept by some clerk or subordinate employee. He then added: "The legislature is one of the three departments of the government. Its members and officers are sworn to support the constitution; and in the discharge of their duties they are acting under oath. Where the constitution directs or commands them to take certain steps in a certain way, or not to enact a law without some prescribed antecedent procedure, their oath includes the obligation to enact the measure in the constitutional manner, or not to enact it without the happening of the constitutional event thus provided. In the imperfection of all human institutions, legislatures may sometimes, through inadvertence or even through design, violate the constitution; but the courts will not lightly conclude that they have intentionally or unintentionally violated rules of conduct laid down for them by the constitution in the transaction of their business. The clerical officials who keep the legislative journals must necessarily do so in the haste and pressure of business; and memoranda, often hurriedly made, must be relied on by them. Assistants and subordinates are employed to aid them. As between the question of whether the President of the Senate and the Speaker of the House, aided by the enrollment committes, all of whom are charged with the duty of seeing that the constitutional rules are enforced, have, through incompetence or corruption, violated that duty and signed and sent to the Governor an act which had not in fact been passed in the constitutional manner, and that the Governor, who is also sworn to obey the constitution, has likewise inadvertently or unintentionally approved an act which had not been lawfully passed, or, on the other hand, that some journalizing clerk or assistant has made a mistake in the preparation of the journal, courts will be more ready to adopt the latter theory than the former."

*Whitley* v. *State,* 134 *Ga.* 758 (68 S. E. 716), was a similar case. There a plea in abatement to an accusation set up the unconstitutionality of an act, for that the Senate journal did not show that the bill received the vote of a majority of all the members elected to the Senate. This court held that the plea was properly stricken, Lumpkin, Justice, stating in the opinion that the

question was controlled by the decision in *DeLoach* v. *Newton,* supra. *Atlantic Coast Line Railroad Co.* v. *State,* 135 *Ga.* 545 (69 S. E. 725, 32 L. R. A. (N. S.) 20), dealt with several certified questions from the Court of Appeals, one of which was as follows: "Is what purports to be an act of the General Assembly, approved August 17, 1908, and found in the published Acts of 1908, pp. 50, 51, commonly known as the 'headlight law,' a law of this State, as against the specific contention presented in this case that it did not receive on its alleged passage a majority of the votes of all the members elected to the Senate, within the purview of and according to the provisions of art. 3, sec. 7, par. 14, of the constitution of this State (Civil Code, 1895, § 5777), and that it so affirmatively appears from the journals of the General Assembly, especially the Senate Journal for 1908, pp. 132, 163, 203, 204, 339, 340, 700 and 701?" This court answered the question in the negative. In the opinion the *DeLoach* and *Whitley* cases were cited. Holden, Justice, said: "When an enrolled act is signed by the presiding officers of both houses, approved by the Governor, and deposited in the office of the Secretary of State, it will be conclusively presumed that the measure was properly put to a vote in both houses, and that it received a constitutional majority; and the court will not upset the act because the journals of the houses happen to show that it did not receive a majority of the votes of either or both branches of the legislature. 36 Cyc. 971. The presiding officer of each branch of the General Assembly, and the Governor, are sworn officers of the State, and it is to be presumed that an enrolled act would not have been signed by these officials and thereby authenticated as being a valid law unless the act on its passage had received the number of votes which the constitution requires in order to enact it. It will be deemed more likely that the subordinate officers of the General Assembly, in the performance of clerical duties, should have made a mistake in recording on the journals the proceedings had by the respective legislative bodies, than that the sworn presiding officers of these bodies should have signed a duly enrolled act as having been lawfully enacted when it did not in fact receive the number of votes required by the constitution in order to insure its passage." In *Dorsey* v. *Wright,* 150 *Ga.* 321 (103 S. E. 591), it was ruled that it was error to admit in evidence, over objection duly made, the

journals of the House and Senate for the purpose of showing that on the final passage of the acts there involved the yeas and nays were not recorded therein. The same principle was recognized and applied in *Bachlott* v. *Buie,* 158 *Ga.* 705 (124 S. E. 339). Regardless of the conflict of authorities in other jurisdictions, the rule in this State is that the journals may not be used for the purpose under discussion.

█ The constitution of the State requires that each House of the General Assembly shall keep a journal of its proceedings. Art. 3, sec. 7, par. 4 (Code, § 2-1804). The original journal shall be preserved, after publication, in the office of the Secretary of State, but there shall be no other record thereof. Art. 3, sec. 7, par. 5 (§ 2-1805). No bill shall become a law unless it shall receive a majority of the votes of all the members elected to each House of the General Assembly; and it shall, in every instance, so appear on the Journal. Art. 3, sec. 7, par. 14 (§ 2-1814). If, notwithstanding these requirements of our organic law, the journals are not competent evidence to attack the validity of an enrolled act of the legislature, duly signed by the President of the Senate and Speaker of the House, approved by the Governor and deposited in the office of the Secretary of State, can the validity of such enrolled act so authenticated, approved, and filed be attacked by showing, from other sources of testimony, that as a matter of fact the bill did not actually pass one or both Houses by the requisite constitutional majority? It would seem, a fortiori, that it could not. Indeed, the basis of the rule that even the journals are not competent to make such an attack is that there is a conclusive presumption that the bill was enacted into law in accordance with the constitutional requirements. *A. C. L. R. Co.* v. *State, Dorsey* v. *Wright,* and *Bachlott* v. *Buie,* supra. If the presumption is conclusive, no evidence to the contrary will be received. Extrinsic evidence that proper notice had not been given before the introduction of a local or special bill, when the same is being attacked as unconstitutional for want of such notice, will not be received by the courts. *Speer* v. *Athens,* 85 *Ga.* 49 (11 S. E. 802, 9 L. R. A. 402). A similar ruling was made in *Harper* v. *Nashville,* 136 *Ga.* 141 (70 S. E. 1102). Although the report of the *Harper* case does not disclose the character of the evidence offered, the original record of file in the

clerk's office shows that it was an affidavit. In England it has uniformly been held that the signed and enrolled act is conclusive. 25 R. C. L., § 147. "This is the rule which is usually adopted when the question is one of first impression," says the author of R. C. L., "to wit, that the enrolled bill imports absolute verity, and the courts will not look beyond it to the legislative journals or *other evidence* [italics ours] to ascertain the terms of the statute or whether it has been regularly enacted." Chief Justice Beasley in Pangborn *v.* Young, 32 N. J. L. 29, makes the statement that the view next above presented is in conformity with the decided weight of American authority. A. C. Freeman, Esq., the well known editor and annotator, in a note to the report of the case of Carr *v.* Coke, in 47 Am. St. R. 801, 815 (116 N. C. 223, 22 S. E. 16, 28 L. R. A. 757), says: "The current of the later and better reasoned authorities is unhesitatingly in favor of the doctrine that a duly enrolled and authenticated statute regular on its face is conclusive of the fact that it was regularly passed, and that courts can not go behind it and entertain evidence by which it may be impeached."

Aside from the fact that the rule against going behind the enrolled bill is required by the respect due to a coequal and independent department of the government, the rule is also one of convenience, which if disregarded would tend to great confusion in the administration of the law. If courts be permitted to conduct an independent inquiry as to whether constitutional requirements have been complied with as to the manner in which the bill was attempted to be passed, when would we ever know that an enrolled act, duly authenticated and filed with the Secretary of State, was valid? The consequence of scrutinizing the conduct of the legislature and its presiding officers, and hearing evidence in respect to the passing of acts which have thereafter been enrolled and signed and deposited with the Secretary of State, would be far-reaching, and the exercise of any such right fraught with danger and uncertainty. If resort to extrinsic evidence be permitted for the purpose of showing the invalidity of an act, enrolled, signed and approved, and on deposit in the office of the Secretary of State, what assurance is there that different trial courts would reach the same conclusion as to the truth of the testimony presented? If the evidence were in conflict, or even un-

disputed, but of such a character as that different and opposite deductions might be reasonably and legitimately drawn therefrom, the spectacle might be presented of an act being declared valid between the parties in one case, and yet pronounced invalid in a separate cause in another court between different suitors. Where would the uncertainty end? If such an attack could be made to-day, why not twenty or forty years after its enactment? To hold such a Damoclean sword over every statute on our books would create a situation most deplorable and result in confusion worse confounded. We are of the opinion that this enrolled act bearing the genuine signatures of the. President of the Senate and the Speaker of the House of Representatives, and the approval of the Governor, having been deposited in the office of the Secretary of State, should be conclusively presumed to have been enacted in accordance with constitutional requirements, and that the court will look neither to the legislative journals nor to the outside sources stated in this record for the purpose of attacking the validity of its passage.

■ In view of the rulings already made, it is unnecessary to decide whether the question made could be raised by plaintiff in a petition for habeas corpus filed after his conviction.

*Judgment affirmed. All the Justices concur.*