A89A1288, A89A1798. WILSON et al. v. LEDBETTER; and vice versa.
(389 SE2d 771)

BEASLEY, Judge.

This case involved the exclusion of certain government benefits (Social Security and Veterans) from the class of "child support payments" which are subject to being disregarded (up to $50) as income when computing the eligibility of a person for other government benefits (Aid to Families with Dependent Children).

Oletha Wilson, acting in her own right and on behalf of others similarly situated, brought an action against James Ledbetter in his capacity as Commissioner of the Department of Human Resources. Wilson and the class she sought to represent are eligible for and recipients of Aid to Families with Dependent Children, a joint federal-state program which provides cash assistance to needy families. In October 1984, as a result of changes in the federal law, grants were recalculated to include income of all stepsiblings in a family, the "sibling deeming" rule. 42 USC § 602 (a) (38). This income had previously been excludable. To partially mitigate the effects of the "sibling deeming" rule, the law was also changed to provide that the first $50 of any child support paid in any given month be disregarded in calculating the amount of grant. 42 USC § 602 (a) (8) (A) (vi) and 42 USC § 657 (b) (1).

DHR took the position that Social Security or Veterans benefits paid to dependents would not be considered child support within the meaning of the $50 child support disregard. Wilson, a recipient of AFDC benefits on behalf of her minor children, became the subject of a routine redetermination review in December 1984. She reported receipt of Social Security disability benefits for a minor member of her family who was a beneficiary of his disabled father. As a result her AFDC budget was modified and her benefits reduced. She requested a hearing and a date was set, but she subsequently cancelled it, causing DHR's hearing unit to dismiss the request in February 1985.

On October 16, 1986, in *Ledbetter v. Foster,* 180 Ga. App. 696

(350 SE2d 31) (1986), this court determined that Social Security benefits *did* constitute child support within the meaning of the relevant enactments.

Apparently because of the belief that federal funds would not be available for reimbursement of payments made pursuant to the *Foster* ruling, an amendment to OCGA § 49-4-6 (b) was enacted and became effective April 17, 1987 (Ga. L. 1987, pp. 1435, 1436). It provided that the $50 child support disregard would *not* be applied to Social Security benefits paid under the OASDI program, to Veterans benefits paid to the family, or to any other benefits not assignable to the State pursuant to Title IV of the Social Security Act.

In June 1987 Wilson filed a class action against DHR for "All AFDC recipients, one or more of whose children received, between October 16, 1986 [the date of the appellate decision], and April 17, 1987 [the effective date of the statute], Social Security or Veterans Administration dependents' benefits based on disability of a parent which benefits were not treated as child support by the defendant for purposes of determining AFDC eligibility or grant amount." The complaint as amended contained three counts. The first challenged the 1987 Act on the ground that it violated 1983 Ga. Const., Art. III, Sec. V, Par. III, because it referred to more than one subject matter. The second contended that the 1987 Act was enacted in violation of the Fiscal Note Act. The third sought recovery for AFDC benefits which plaintiffs should have received for the period between the *Foster* decision and the effective date of the amendment to OCGA § 49-4-6.

The trial court certified Wilson's proposed class and after discovery both sides moved for summary judgment. At the conclusion of the hearing, DHR's motion as to counts one (the constitutional issue) and two (violation of the Fiscal Note Act) was granted, as was Wilson's motion as to count three (recovery of benefits for the six-month period). DHR appealed to the Supreme Court from the grant of summary judgment in favor of Wilson on count three, but because the constitutional issue was not raised on the appellate level, its appeal was transferred to this court and became Case No. A89A1798. Wilson's appeal, Case No. A89A1288, arises from the holding that OCGA § 49-4-6 (b) is not in violation of the Fiscal Note Act.

## Case No. A89A1798

1. Among the several enumerations of error in DHR's appeal, crucial is its contention that Wilson failed to exhaust available administrative remedies. This is especially significant because a determination must be made in the context of a class action involving over 1,700 people. Among the requirements of a class action are numer-

osity of the potential class action members, the ability of plaintiff to represent the members, and whether common questions of law and fact predominate over individual issues. *Ford Motor Credit Co. v. London*, 175 Ga. App. 33 (332 SE2d 345) (1985); *Stevens v. Thomas*, 257 Ga. 645, 648 (2) (361 SE2d 800) (1987); *Ga. Investment Co. v. Norman*, 229 Ga. 160 (190 SE2d 48) (1972). If exhaustion of administrative remedies was required, it would be an essential factor in describing members of the class and also in ascertaining whether Wilson could represent the class.

DHR cites its own regulations and the Administrative Procedure Act as establishing a thorough system for hearings and administrative review of those hearings before resort to the courts. See OCGA §§ 49-4-13 and 50-13-19. See Rules & Regulations of the State of Ga., 290-1-1.05, .14, .22 & .23. DHR points out that it has long been the rule in Georgia that a litigant must exhaust administrative remedies prior to seeking judicial review of an agency decision, even if constitutional issues are raised, citing *Dept. of Public Safety v. MacLafferty*, 230 Ga. 22 (195 SE2d 748) (1973), and *Dept. of Public Safety v. Foreman*, 130 Ga. App. 71 (202 SE2d 196) (1973). Moreover, it points out, even use of a declaratory judgment proceeding under OCGA § 9-4-2 to avoid administrative review is not favored. See *George v. Dept. of Natural Resources*, 250 Ga. 491 (299 SE2d 556) (1983), which also reaffirms the general principles requiring resort to administrative channels first.

Exhaustion of administrative remedies prior to review is contained in OCGA § 50-13-19 (a), but it also provides that it does not limit utilization of or the scope of judicial review available under other means of review, relief, etc. Wilson argues that because of the entrenched nature of DHR's policy with reference to the $50 disregard it would have been futile to pursue administrative relief, citing Rules & Regulations 290-1-1-.13: "A hearing need not be granted when either State or Federal Law require automatic grant adjustments for classes of recipients unless the reason for an individual appeal is incorrect grant computation. In such cases when incorrect grant computation is not involved, the Hearing Officer shall deny the request." Rules & Regulations 290-1-1-.15 (b) state that DHR may deny or dismiss a request for a hearing when "the sole issue is one of State or Federal Law requiring automatic grant adjustments for classes of recipients."

Two important principles are relevant to a consideration of Wilson's arguments. 1) " 'Decisions to the effect that a failure to invoke administrative remedies . . . preclude(s) or render(s) premature a resort to the courts (are) based upon *statutes* which by *express terms or necessary implication* (give) to the administrative board *exclusive jurisdiction* or (which make) the exhaustion of administrative reme-

dies a *condition precedent* to judicial action.'" *Hunnicutt v. Ga. Power Co.*, 168 Ga. App. 525, 526 (1) (309 SE2d 862) (1983) (emphasis in original.), quoting from *Evans v. Louisville & Nashville R. Co.*, 191 Ga. 395, 401 (12 SE2d 611) (1940). 2) "A litigant is not required to exhaust an optional administrative process before seeking redress to the courts." *Motor Fin. Co. v. Harris*, 150 Ga. App. 762, 765 (4) (258 SE2d 628) (1979). Granted that an unexhausted administrative remedy does not, in itself, afford an absolute defense to the institution of an action, the concept of futility in seeking redress through the administrative process is something more than the mere inability to secure a favorable ruling. "[O]nly in rare instances will the requirement of exhaustion be relaxed. This will be the case only when the administrative remedy exacts a price which causes it to be no remedy at all." *Moss v. Central State Hosp.*, 255 Ga. 403, 404 (339 SE2d 226) (1986). Examples given in *Moss* are an exorbitant fee as a prerequisite to a remedy or if the remedy is available only upon exposure to loss of livelihood.

No exorbitant price was exacted for Wilson to follow the applicable administrative procedure. There was little hope for affirmative relief, but there was no threatening reprisal either. This was not a rare instance for the relaxation of the exhaustion rule. See *Rybert & Co. v. City of Atlanta*, 258 Ga. 347, 350 (4) (368 SE2d 739) (1988); *Moss*, supra; *George*, supra; *Foreman*, supra. As first noted, this is a class action involving over 1,700 individuals and, because the requirement of exhaustion is rarely relaxed, this court is loathe to grant an exception of such far reaching consequences. Moreover, a class comprised solely of those who had exhausted their administrative remedies, which plaintiff is not a member of, might well be a viable one; we make no ruling on such proposition.

Summary judgment should have been granted to DHR because of the bypass of the administrative process.

## Case No. A89A1288

2. Exhaustion of administrative remedies may also be applicable to Wilson's appeal but no such contention is made. For that reason and because the validity of the 1987 Act is crucial to the parties so that a determination as to its continuing viability would effectively "turn on the light" for all concerned, we consider the merits.

Wilson contends that the 1987 amendment to OCGA § 49-4-6 is invalid because it was passed in violation of OCGA § 28-5-42, the Fiscal Note Act. Sub-section (a) of that code section mandates that "any bill having a significant impact on the anticipated revenue or expenditure level of any state department . . . or other state agency must be introduced no later than the twentieth day of any session." Sub-

section (b) further provides if any bill is introduced after the pre-scribed time, it shall not be considered in any manner by either the Senate or the House. Wilson notes the legislative journal reveals that the 1987 Act was introduced 25 days after the beginning of the session.

A long procession of cases, starting with *DeLoach v. Newton*, 134 Ga. 739, 742 (68 SE 708) (1910), has pronounced the rule expressed well in *Atlantic C. L. R. Co. v. State*, 135 Ga. 545 (1) (69 SE 725) (1910): "A duly enrolled act, properly authenticated by the regular presiding officers of both houses of the General Assembly, approved by the Governor, and deposited with the Secretary of State as an existing law, will be conclusively presumed to have been enacted in accordance with constitutional requirements; and it is not permissible to show by the legislative journals, or other records, that it did not receive on its passage a majority vote of all the members elected to each house, or that there was any irregularity in its enactment." See *Whitley v. State*, 134 Ga. 758, 776 (4) (68 SE 716) (1910); *Dorsey v. Wright*, 150 Ga. 321 (103 SE 591) (1920); *Bachlott v. Buie*, 158 Ga. 705, 708 (3) (124 SE 339) (1924); *Williams v. MacFeeley*, 186 Ga. 145, 150 (197 SE 225) (1938); *Capitol Distrib. Co. v. Redwine*, 206 Ga. 477, 484 (1) (57 SE2d 578) (1950); *Collins v. Woodham*, 257 Ga. 643 (1) (362 SE2d 61) (1987). Early cases (see, e.g., *Speer v. City of Athens*, 85 Ga. 49, 53 (1) (11 SE 802) (1890), *Fullington v. Williams*, 98 Ga. 807 (1) (27 SE 183) (1896), and *Cutcher v. Crawford*, 105 Ga. 180, 182 (1) (31 SE 139) (1898)) apparently countenanced examination of the journals but not any other extrinsic source. Since *DeLoach*, however, the Supreme Court in an unbroken line of decisions has refused to consider the journals of the General Assembly as a means of invalidating an enrolled act. See *Hooper v. Harvey*, 62 Ga. App. 224 (2)' (8 SE2d 456) (1940), where this court acknowledged that the validity of an enrolled act could not be disputed by reference to the legislative journals.

Because the conclusive presumption doctrine is applicable where state constitutional violations have been urged, there is no inhibition against applying it to a statutory requirement. The sole Supreme Court case treating the Fiscal Note Act has recognized that generally the courts will not question the procedure used by the General Assembly in enacting legislation and refused to enforce the requirements of that Act as though it were a constitutional mandate. *Richmond County v. Pierce*, 234 Ga. 274, 278 (3) (215 SE2d 665) (1975).

Wilson points to the enactment of OCGA § 28-5-56 which makes specific reference to the conclusive presumption doctrine with regard to Local Government Impact Fiscal Notes. Because the Fiscal Note Act contains no similar reference to the doctrine, she argues that the omission establishes the legislative intent to bypass it. Since it is ap-

plicable even where constitutional requirements are not met, the "conclusive presumption" rationale could only be eliminated, if at all, by specific reference to its exclusion, not by mere omission.

The trial court correctly upheld the validity of the amendment to OCGA § 49-4-6 in the face of this attack.

*Judgment affirmed in Case No. A89A1288; judgment reversed in Case No. A89A1798. Carley, C. J., and McMurray, P. J., concur.*

DECIDED NOVEMBER 28, 1989 —
REHEARING DENIED DECEMBER 19, 1989 — 

*Phyllis J. Holmen, John L. Cromartie, Jr.,* for appellant.

*Michael J. Bowers, Attorney General, H. Perry Michael, Executive Assistant Attorney General, Stephanie B. Manis, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, William M. Droze, Mary Foil Russell, Assistant Attorneys General,* for appellee.