## EVANS *et al.* v. LOUISVILLE AND NASHVILLE RAILROAD COMPANY *et al.*

No. 13279. DECEMBER 5, 1940.

396

*W. D. Lanier,* for plaintiffs.

*Hammond, Kennedy & Yow, W. Inman Curry,* and *Cumming, Harper & Nixon,* for defendants.

REID, Chief Justice. ■ One of the points presented by counsel for defendants in error in support of the judgment is that the superior court has no jurisdiction to determine the relative seniority rights of contesting engineers of a railroad company, under a collective-bargaining contract between engineers and firemen and such company, by virtue of the provisions of the Federal railway-labor act as amended. 45 U. S. C. A. § 153 et seq. This act established a board to be known as the National Railroad Adjustment Board, and provided that one of the divisions of this

board should have jurisdiction over disputes involving engineers, firemen, hostlers, etc. It was further provided that "The disputes between an employee or group of employees and a carrier or carriers, growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties, or by either party, to the appropriate division of the adjustment board, with a full statement of the facts and all supporting data bearing upon the disputes." It is contended, under this provision, that the National Railroad Adjustment Board is vested with exclusive jurisdiction of disputes between employees and the carrier as to seniority rights, or at least that the complaining employee or employees must, before resorting to the courts, first exhaust the remedies afforded by this provision. This contention is untenable. The present action is one to enforce certain alleged rights under a contract, and does not involve or arise out of any order of the National Railroad Adjustment Board, and the above provision does not purport in such case to prevent recourse to the courts in the first instance. In Illinois Central R. Co. *v.* Moore (C. C. A.), 112 Fed. 2d, 959 (12, 13), 965, 966, Judge Sibley in delivering the opinion said, on this point: "The plea that suit may not be filed without recourse to the adjustment board is without merit. The adjustment board may settle the disputes of the individual employee as well as those of the group, 45 U. S. C. A. § 153 (i) : as may the mediation board, 45 U. S. C. A. § 155 (1). The section first cited says that a dispute 'shall be handled in the usual manner up to and including the chief operating officer of the carrier,' and then it 'may be referred' to the adjustment board. The permission to go to the adjustment board does not exclude direct recourse to the courts." See Bell *v.* Western Railway of Alabama, 228 Ala. 328 (153 So. 434). Decisions to the effect that a failure to invoke administrative remedies before the Interstate Commerce Commission or other Federal administrative boards precluded or rendered premature a resort to the courts were based upon statutes which by express terms or necessary implication gave to the administrative

board exclusive jurisdiction or made the exhaustion of administrative remedies a condition precedent to judicial action. See U. S. v. Illinois Central R. Co., 291 U. S. 457 (54 Sup. Ct. 471, 78 L. ed. 909); Myers v. Bethlehem Shipbuilding Corporation, 303 U. S. 41 (58 Sup. Ct. 459, 82 L. ed. 638). 51 Harvard Law Review, 1254, 1260, where many of the cases on the subject are discussed.

■ Rights of seniority, given under a collective-bargaining contract between a railroad company and its employees, are such property rights as will, in a proper case, be protected by injunctive relief in a court of equity (*O'Jay Spread Co.* v. *Hicks, 185 Ga. 507,* 512, 195 S. E. 564; Gregg v. Starks, 188 Ky. 834, 224 S. W. 459; Gleason v. Thomas, 117 W. Va. 550, 186 S. E. 304; Grand International Brotherhood of Locomotive Engineers v. Mills, 43 Ariz. 379, 31 Pac. 2d, 971); and where one is employed by a railroad company under a collective-bargaining contract made by the company and representatives of its employees in behalf of all, and alleged seniority rights of the person thus employed are antagonistic to those claimed by other employees, the latter have such an interest in the contract as will authorize a suit thereon, if in fact their rights under the contract have been infringed. *O'Jay Spread Co.* v. *Hicks,* supra. See also *Carruth* v. *Ætna Life Insurance Co.,* 157 *Ga.* 608 (122 S. E. 226).

■ We come now to what appears to be the controlling point in the case, that is, the proper construction of the terms of the contract. By the express terms of the collective-bargaining contract, under which the defendant was employed by the railroad company as an engineer in August, 1920, furloughed in December, 1920, and returned to service in May, 1937, his seniority was fixed as of the date of first employment, and preceded the seniorities of the plaintiffs, whose promotions from firemen to engineers occurred at later dates. The defendant did not lose his seniority and right of working thereunder by furlough or otherwise, unless it has been forfeited under other provisions of the contract. The contract provided that "when hired engineers are laid off on account of reduction in service [as the defendant was], they will retain seniority rights, provided they return to actual service within 30 days from the date their services *are required;*" and that "engineers taken off under this rule shall *be returned* to service as engineers in the order of their seniority as engineers, and as soon as *it can be shown* that

engineers in assigned or extra passenger service can earn equivalent to 4800 miles per month," or stated lesser mileages in two other kinds of service. The petition alleged that on many dates since the defendant West was furloughed in 1920 the business of the railroad has been such as to require his services, and that he did not return to service within thirty days from such dates. It is contended that, this being true, his original seniority date became forfeited as against these plaintiffs under the terms of the provision of the contract first above quoted. These provisions as to the return of the engineer to work when his services were required and when the traffic conditions improved, as stated, properly construed, were not in our opinion automatic or self-executing, so as to require him constantly to familiarize himself with the records and situation of the railroad, and without any notice from the railroad company, or even actual knowledge on his part of changed traffic conditions, to present himself at any and all times to the company for reemployment, assume the burden of showing that the changed conditions would permit him to earn mileages as stated, and be ready for duty within thirty days thereafter, even though the improved traffic conditions might meanwhile decline. Such a strained construction of the contract is obviated by the express language, *"be returned* to service . . in the order of their seniority," as well as by the words "as soon as *it can be shown"* that the particular stated traffic improvements have occurred, with which no furloughed employee could reasonably be bound to keep familiar. The provision in question is one providing for a forfeiture of the vested right of a hired engineer who has been furloughed to his seniority date and all rights accruing thereunder, and it should be construed strictly in his favor and against those who assert thereunder that as to them a forfeiture of the right to work under his original seniority date has occurred. Accordingly, under the views expressed, the mere facts alleged, that the defendant engineer did not so present himself for service, even though conditions might have so improved, as alleged, as to render his return to service proper, and even though he was not re-employed until many years later, did not cause a loss of his seniority, which was fixed by the contract as of the date of original employment, where upon the first notice or order from the company to report for work as engineer he complied therewith. Nor do we think that the contract makes a retention of

his seniority dependent on the continued publication of his name and date of employment on the engineers' seniority lists or rosters on bulletin boards of the company, after their first publication and throughout his furlough.

While it appears that the plaintiffs had been promoted from firemen to engineers and their seniority dates fixed by the dates of their promotion as provided in the contract, and that the defendant did not challenge the engineers' seniority lists or rosters in which their names and such dates appeared, and from which his name and prior seniority date were omitted, this did not cause the defendant to lose his seniority as against the seniorities of the plaintiffs. This is true for the reason that, the defendant's prior seniority having become fixed unless lost under the express provisions of the contract as stated, no duty was imposed upon him to follow the postings of subsequent lists or rosters containing other names and dates, even though his own might have been omitted; and for the additional reason that no notice or knowledge on the part of the defendant as to such postings of the seniorities of the plaintiffs and of the omission of his own seniority from such lists, at a time when he was on furlough, is shown. Under the views expressed the court properly held that the seniority of the defendant engineer preceded the seniorities of the plaintiffs, and should not be disturbed by injunction; and properly dismissed the action on general demurrer.

*Judgment affirmed. All the Justices concur.*