LEEDER et al. v. CITIES SERVICE OIL CO. et al.

No. 32887. Jan. 27, 1948.

*189 P. 2d 189.*

' Herman Merson, of Oklahoma City, for plaintiffs in error.

F. H. Bacon and R. O. Mason, both of Bartlesville, for defendant in error Cities Service Oil Company.

Jack N. Hays, of Tulsa, for defendants in error Central Committee of the Gasoline, Chemical Refinery and Chemical Crude Plants, A. N. King, Oil Workers International Union, Hugh Campbell, R. C. Keith, J. W. Wood, Zurel D. King, D. M. Jackson, L. J. Morgan and Jim H. Guy.

GIBSON, J. The parties to this appeal occupy the same relative positions as in the trial court and will be referred to as plaintiffs and defendants, respectively, except, when mentioned specifically, the Cities Service Oil Company will be designated as Cities Service, the Indian Territory Illuminating Oil Company as I. T. I. O., and Oil Workers International Union as Union.

On August 1, 1941, Cities Service acquired the properties of the I. T. I. O. Among them were three gasoline plants located in Oklahoma county and known, respectively, as Lemon Plant, Jones Plant, and Bodine Plant. The operations of the plants were continued with the service of I. T. I. O. employees, among whom were the plaintiffs. At that time the employees of Cities Service, engaged in the gasoline division, were operating under a contract executed May 9, 1941, between the Union as exclusive bargaining agent of the employees and the Cities Service under

which seniority rights were recognized, the substance of which so far as material is that where one was dislodged from his job his seniority entitled him to bid only into the job of the one with the least seniority in the same "letter bracket" of the employment. The employees at the named plants, under contract between said Union and the I. T. I. O., enjoyed seniority rights, the substance of which, so far as material, was that where one was dislodged he was entitled to bid into the job of any one of less seniority than he himself enjoyed. By reason of the termination of the I. T. I. O. contract those employed at said plants on entering the employment of Cities Service were without seniority rights. In order to accord such rights and accommodate them to corresponding rights enjoyed by Cities Service employees in the gasoline division the Cities Service and the Union as bargaining agent of the employees in such division on October 13, 1941, amended the contract of May 9, 1941, so as to provide that the seniority rights of the former I. T. I. O. employees, as between themselves and as to employment in the I. T. I. O. plants so long as operated, should be as provided under the I. T. I. O. contract, and that as to new plants or idle plants resuming operations the jobs therein were to be awarded to former I. T. I. O. employees in the proportion their number bore to that of other Cities Service employees then engaged in the gasoline division, and that as between themselves the former I. T. I. O. employees would be entitled to take the jobs so awarded according to the I. T. I. O. seniority. These provisions and another to the effect that an employee in either group could bid on any posted job in the other group and that the seniority date therefor should be August 1, 1941, are reflected in the contract between the Cities Service and the Union bearing date of February 14, 1946. On August 2, 1946, by contract between Cities Service and the Union, the contract of February 14th was amended as follows:

"It is agreed that the following amendments shall be made to the labor agreement of February 14, 1946, between Cities Service Oil Company and Oil Workers International Union-Gasoline-Chemical Division:

"Article IV. There shall be added to Section 7(a) the following: With respect to bumping procedure, the Indian Territory Illuminating Oil Company seniority shall be disregarded until and unless an I. T. I. O. Co. former employee is not able to bump into any company wide job in his same letter bracket, using his Cities Service seniority, then he can use his I. T. I. O. seniority and bump into a former I. T. I. O. plant, still operating. If this does not get him a job in the same bracket, he will use his Cities Service seniority to bump into the next lower bracket same as any Cities Service employee.

"In other words, I. T. I. O. seniority will not be used except as to former I. T. I. O. operated plants then operating and then only if an I. T. I. O. man's Cities Service seniority will not get him into a Cities Service plant in the same bracket."

The Lemon Plant was discontinued in 1943. The Jones Plant was discontinued in September, 1946, and in contemplation of the dislodgement of the plaintiffs and others employed there they were notified by the Cities Service that they were privileged under seniority to "bump" into designated jobs at plants located at Odessa, Texas. Plaintiffs are and for years have been residents of Oklahoma City. If employed at the Bodine Plant they could continue such residence. Employment at Odessa would necessitate removal of such residence which would involve detriment. Feeling aggrieved, plaintiffs sought to obtain relief through Union activity to the extent of requesting the Grievance Committee to report same, which was denied because the majority thereof refused to make report. Thereafter plaintiffs filed this action seeking to enjoin the enforcement of said amendment, and it is from the denial thereof by the trial court that this appeal is prosecuted.

Plaintiff's argument for reversal of the judgment is prosecuted under the general proposition that the court erred in denying plaintiffs' application for injunction under which there is sought to establish, in substance, the following points:

1. Under the contract, prior to the amendment, plaintiffs were entitled as a matter of right thereunder to "bump" into Bodine Plant upon being dislodged at Jones Plant.

2. That the enforcement of the amendment of August 2, 1946, would deprive them of a valuable right without authority in law therefor.

3. That the amendment was unauthorized.

4. That plaintiffs were w i t h o u t remedy except through resort to equity.

Defendants challenge each of the several grounds. Touching the first it is contended the contract is vague, the alleged right not clear, and hence affords no basis for equitable relief. Concerning the second ground, it is contended that the amendment does not alter or impair plaintiffs' seniority rights existing under the contract and that the effect thereof pertains only to the method of their exercise which was contemplated by but not made clear in the contract. As to the third, it is contended the amendment was authorized and effective even though it be considered that the existing seniority rights were thereby qualified or altered. And, touching the fourth, that full resort to obtain Union consideration of the alleged grievance was not had.

That seniority rights arising under contract between the Union and the employer inure to the benefit of the employee and that he may invoke equity for their protection, where full resort to Union tribunals has proved unavailing without proper cause, is recognized by this court. Lockwood et al. v. Chitwood, 185 Okla. 44, 89 P. 2d 951. The particular ground or grounds upon which relief was denied does not appear because the finding was general. It is obvious, however, that if the amendment of August 2, 1946, is valid, the judgment must be sustained.

It is urged that the amendment never became operative for two reasons: One, that by the terms of the contract it was not subject to amendment except as to wages prior to expiration of one year from the date thereof, which period had not expired. And, the other, that the seniority rights relied on by the plaintiffs were vested individual rights and therefore neither the Union nor a majority of the employees so engaged were authorized to and therefore could not contract such rights away without plaintiffs' consent which was never given.

The provision of the contract relied on in support of the first ground is as follows:

"This agreement shall be effective for a period of one year from the beginning of the first normal payroll period of Company following notice to the Company that this agreement has been ratified by all of the local unions concerned, and shall continue after said year until terminated by thirty (30) days written notice by either party. Regardless of said one year term, either party may reopen bargaining negotiations on the subject of wages but none other."

It is manifest that this is a limitation only upon the right of either to seek to impair the contract without the consent of the other, because it is well established that both parties to a contract can by mutual agreement alter or annul the contract unless the power so to do is restricted by law. Mullen v. Thaxton, 24 Okla. 643, 104 P. 359. Whether such restriction obtains is to be determined by matters pertaining to the second ground.

In support of the contention there existed no authority for the amendment, there is cited annotated Note

appearing in 153 A. L. R. 60-101, as reflecting cases covering the situation, and from Percy v. Louisville & N. R. Co., 198 Ky. 477, 248 S. W. 1042, 33 A. L. R. 322, discussed therein, and relied on as being in point. The case is not in point. The annotator, in the statement under which the case is cited, said:

"It may be stated as a general proposition that as long as a collective labor agreement which confers certain rights upon an employee subsists as to him—that is, has not been terminated lawfully or according to its terms, as a valid discharge—no action can be taken without the consent of the employee by way of modification or relaxation of or deviation from the agreement by any subsequent agreement or arrangement destroying or denying such rights."

It is evident that the author is not discussing what conduct is sufficient to accomplish a change of rights but rather what may be termed arbitrary and thus is in disregard thereof. Other cases appearing in the annotation are cited and quoted from but they throw no more light on the issue here.

In the instant case the Union, in executing the contract of February 14, 1946, upon which plaintiffs rely, was representing all the employees in the gasoline division of which plaintiffs and other former I. T. I. O. employees were a part. It is admitted that it had exclusive bargaining rights as representative of the plaintiffs and others engaged in said division. As to the exercise of such power and as a limitation thereon, sec. 1, art. IV of the Constitution and By Laws of the Union, provides:

"No International officer or representative shall be authorized to execute or terminate a local or national agreement or supplement until a majority of members voting have voted favorably as provided for under Article IV, Sections 3, 4, and 5. Violation of this provision shall constitute a dereliction of duty."

The amendment involved was initiated, adopted and referred to the membership for ratification in accordance with the Union laws. At the election held thereon it was ratified by a majority of such members. Under such circumstances the question is whether the seniority rights of the plaintiffs acquired through the previous contract made by the Union can be qualified by the subsequent contract without plaintiffs' consent. To hold, as claimed by plaintiffs, that such rights may not be disturbed is not only to ignore the implication of power to the contrary arising from the continued relationship between the employees and the Union, but is to say in effect that such individual rights, accorded solely because they are consistent with the rights of the membership as a whole, are superior thereto although they, by reason of changed conditions, have become inconsistent with rights of the whole membership.

In Hartley v. Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, 283 Mich. 201, 277 N. W. 885, the Union by supplemental agreement eliminated the employment of married women except in certain situations notwithstanding · seniority rights existed under the contract and the power of the Union to do so was called in question. The court held:

"The purposes of the brotherhood, as stated in the preamble of the constitution, are to promote unity of action and the general welfare of the members thereof. These purposes are accomplished by the instrument of collective bargaining with the employer as to conditions of employment, etc. But by becoming a member of the brotherhood, no contractual rights arose out of the constitution, statutes and protective laws which guaranteed plaintiff that no action would be taken or agreements made for the benefit of the brotherhood as a whole if such action should operate to the detriment of plaintiff as an individual.

"The seniority rights acquired by her did not arise by virtue of her contract of employment with her employer, but existed by reason of the agreement of

622

1921 between the railway and the brotherhood. Ryan v. Railroad Co., 267 Mich. 202. This agreement was executed for the benefit of all members of the brotherhood and not for the individual benefit of plaintiff. When, by reason of changed economic circumstances, it became apparent that the earlier agreement should be modified in the general interest of all members of the brotherhood it was within the power of the latter to do so, notwithstanding the result thereof to plaintiff. The brotherhood had the power by agreement with the railway to create the seniority rights of plaintiff, and it likewise by the same method had the power to modify or destroy these rights in the interest of all the members."

In the case of O'Keefe v. Local 463 of United Association of Plumbers and Gas Fitters, etc., 277 N. Y. 300, 14 N. E. 2d 77, 117 A. L. R. 817, the court held that no action could be maintained against a labor union for the recovery of damages for loss of employment, or to restrain the Union from prohibiting the employer from employing the plaintiffs, where the action was not specifically directed against plaintiffs' employment, and was not a result of bad faith or malice against them. And in annotated note thereto (117 A. L. R. 817) covering the right of a member whose existing right has been damaged by the act of the Union, it is said:

"There is very little authority on the question under present consideration, and, in so far as any general rule may be deduced from the limited number of cases, it may be stated that a member of a trade-union who has suffered damage, or loss of or demotion in employment, as a result of acts done by the union in good faith and without malice against him, not specifically aimed to cause damage or loss to him, but in the furtherance of its lawful policy, purpose, and object, has no cause of action for damages or injunction against such union. O'Keefe v. Local 463, United Asso. P. G. (reported herewith) ante, 817; Hartley v. Brotherhood of R. & S. S. Clerks (1938) 283 Mich. 201, 277 N. W. 885. And some courts have reached the same result even where the action taken by the union had as its purpose, at least secondarily, the discharge or demotion of the aggrieved member. Minasian v. Osborne (1911) 210 Mass. 250, 96 N. E. 1036, 37 L. R. A. (N.S.) 179, Ann. Cas. 1912C, 1299."

The principles so announced are applicable to the situation herein. And it is clear that the amendment, whether merely to clarify what was thought to be the intent of the contract or to qualify the matter of seniority because of changed conditions, was within the power of the Union if ratified by a majority of the members of the division. And since same was so ratified it follows that plaintiff's action is without merit.

The judgment of the trial court is affirmed.