Belanger and others, Plaintiffs and Respondents, vs. Local Division No. 1128, Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America and others, Defendants and Appellants: Duluth-Superior Bus Company, Defendant and Respondent.*

*January 19—March 8, 1949.*

---

\* Motion for rehearing denied, with $25 costs, on May 3, 1949.

346

347

348

For the appellants there was a brief by *Barney B. Barstow* and *Johnson, Fritschler & Barstow,* all of Superior, and oral argument by *Mr. Barstow.*

For the respondents there was a brief by *McGill & Leveroos* of Superior, and oral argument by *Henry M. Leveroos.*

For the defendant Duluth-Superior Bus Company there was a brief by *Crawford & Crawford* of Superior.

MARTIN, J.   The question involved in this case is whether the agreement entered into by the original bus drivers, the former streetcar operators, and the Duluth-Superior Bus Company on April 6, 1937, which agreed on a seniority list, known as the "compromise seniority list," is a valid and enforceable contract.

Seniority rights are things of value to the employees which are capable of determination.   The main consideration in determining these rights is length of service.   It was stated in *Dooley v. Lehigh Valley R. Co.* (1941), 130 N. J. Eq. 75, 21 Atl. (2d) 334, 335, syllabus 4 :

" 'Seniority' rights result from desire of railway labor organizations to protect men of extended service in right to their jobs and to select their jobs in preference to men who have had shorter periods of service."

After the merger of the bus company and the streetcar company, all employees, individually and collectively, entered

into an agreement determining seniority rights based on length of service.

The union was thereafter formed and accepted the seniority list of April 6, 1937. The compromise seniority list was approved by the arbitration board which stated:

"It is further determined that the equities of fairness and justice are in favor of the continuation of the so-called compromise list as agreed upon and heretofore used by both the individual employees and by the union and the employer, and that said compromise list, a copy of which is hereto attached, marked 'Exhibit A' and hereby made a part hereof, should continue as the seniority list of the employees of the Superior division of the Duluth-Superior Transit Company and the Duluth-Superior Bus Company."

Seniority rights here do not flow from any union bargaining but exist because of a written agreement or contract involving the "compromise seniority list" which existed before the union was formed or before its present members joined, and was in effect for some years. (See Annotations in 142 A. L. R. 1055 and 153 A. L. R. 60, and cases cited therein.) The individual rights of seniority in this case were determined and remain fixed.

Bargaining for seniority rights is quite different than bargaining for wages, hours, working conditions, etc. The latter conditions affect the union as a whole and are ever changing. A collective-bargaining agreement may be necessary and its results are final and binding under the union's by-laws when the union bargains for benefits for all its members.

In its letter of July 12, 1946, to the employer, the union set out sixteen different matters which it desired to bargain with the employer. All points except No. 2 (seniority of Superior division bus operators *to be determined by the union* [italics ours]) were proper matters for collective bargaining. The agreement of 1937 in no way affected the union's rights to bargain on any of the other points set out.

The Duluth-Superior Bus Company has stated in its brief "that its position in this litigation is that it will say nothing as to the relative merits of the claim of either group either from an equitable or a legal standpoint."

Sec. 9 (a) of the Taft-Hartley Act (29 USCA App., sec. 159 (a)) provides as follows:

"(a) Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: *Provided,* That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: *Provided further,* That the bargaining representative has been given opportunity to be present at such adjustment."

Our decision in this case in no way conflicts with the above provision. We hold here that seniority was determined by the 1937 agreement. This also applies to sec. 111.05 (1), Wis. Stats., which provides:

"Representatives chosen for the purposes of collective bargaining by a majority of the employees voting in a collective-bargaining unit shall be the exclusive representatives of all of the employees in such unit for the purposes of collective bargaining, provided that any individual employee or any minority group of employees in any collective-bargaining unit shall have the right at any time to present grievances to their employer in person or through representatives of their own choosing, and the employer shall confer with them in relation thereto."

*J. I. Case Co. v. National Labor Relations Board* (1944), 321 U. S. 332, 64 Sup. Ct. 576, 88 L. Ed. 762, relied on by appellants, is not in conflict with this position. In that case

there was a dispute between the company and the union relating to contracts which the company had entered into with individual employees fixing wages and hours of employment. In the present case we have no dispute between the company and the union. It is wholly within the union. The contract entered into by the original bus drivers, former streetcar operators, and the Duluth-Superior Bus Company previous to the formation of the union, does not in any way "forestall bargaining or to limit or condition the terms of the collective-bargaining agreement." The court continued (p. 337) :

" 'The board asserts a public right vested in it as a public body, charged in the public interest with the duty of preventing unfair labor practices.' *National Licorice Co. v. Labor Board*, 309 U. S. 350, 364, [60 Sup. Ct. 569, 84 L. Ed. 799]. Wherever private contracts conflict with its functions, they obviously must yield or the act would be reduced to a futility."

Here the private contract does not conflict with the functions of the bargaining agent nor the company. It does not bar the union from bargaining for any advantages regarding wages, working conditions, etc.

Appellants also relied on *International Union v. J. I. Case Co.* (1947), 250 Wis. 63, 73, 26 N. W. (2d) 305, and quoted :

"Collective bargaining is a continuing and developing process by which, under present law, the relationship between employer and employee is to be molded, and the terms and conditions of employment progressively modified along lines mutually satisfactory to all concerned. Changing conditions require continuing collective bargaining and changed contracts of employment. The written contract of yesterday does not become a final and permanent result. *National Labor Relations Board v. Newark Morning L. Co.* (3d Cir.) 120 Fed. (2d) 262."

There are no cases cited involving seniority rights which had once been established by contract as here. The matters in dispute were matters between the union and the employer,

and not wholly matters between the members of the union as in the present case. Also, the authorities hold that there must be some change in economic conditions to enable the contract to be changed.

It was stated in *Yazoo & M. V. R. Co. v. Sideboard* (1931), 161 Miss. 4, 13, 14, 133 So. 669:

"So that, although only a few years ago the courts were holding that an individual member of a labor union could not maintain an action for the breach of an agreement between an employer and the union of which the plaintiff was a member in respect to wages and other rights fixed in the contract [cases cited], these rulings have been left in the rear in the advancement of the law on this general subject, and the holdings now are that these agreements are primarily for the individual benefit of the members of the organization, and that the rights secured by these contracts are the individual rights of the individual members of the union, and may be enforced directly by the individual. *Piercy v. Louisville & N. Ry. Co.,* 198 Ky. 477, 248 S. W. 1042, 33 A. L. R. 322; *Gulla v. Barton,* 164 App. Div. 293, 149 N. Y. S. 952; *Blum & Co. v. Landau,* 23 Ohio App. 426, 155 N. E. 154; *Cross Mountain Coal Co. v. Ault,* 157 Tenn. 461, 9 S. W. (2d) 692."

The case of *Piercy v. Louisville & N. R. Co.* (1923), 198 Ky. 477, 248 S. W. 1042, involved the seniority rights of a conductor on the railroad. The conductor had a good run; the railroad acceded to the request of the union, of which Piercy was a member, to change his seniority, to his detriment. He sought to be reinstated to his rights by a suit against the railroad and the union. The action of the union was not indorsed or brought about by Piercy; it had volunteered in the matter for purposes of its own. There was no necessity because of business conditions for any change in the seniority of Piercy. The lower court held that Piercy was entitled to be reinstated to his rights, and the railroad did not appeal. The union appealed, and the court sustained the decree of the lower court, and also held that such agreement between

organizations of employees and their employers were not designed to place it within the power of the organization to change or modify the contract at pleasure, so as to affect injuriously the individual rights of its members theretofore secured by the agreement; that the officers of labor unions were not the agents of the members to affect their individual rights, and that a labor organization could not, by arbitrary act, deprive one of its individual members of rights secured to him by the agreement which it had made with the employer. It was stated (pp. 484, 485) :

"The primary purpose in the organization of labor unions and kindred organizations is to protect their individual members and to secure for them a fair and just remuneration for their labor and favorable conditions under which to perform it. Their agreements with employers look always to the securing of some right or privilege for their individual members, and the right or privilege so secured by agreement is the individual right of the individual member, and such organization can no more by its arbitrary act deprive that individual member of his right so secured than can any other person. . . .

"Doubtless under the terms of his agreement as a loyal member [of the union], it was his duty to acquiesce in the will of a majority inside the order upon any question of policy or any difference of opinion that might have arisen affecting the welfare of the organization. But here we have a personal right acquired by him as against the railroad company under contract, and we have the Order of Railroad Conductors asserting the right to waive for him the benefits of that contract."

See *Leeder v. Cities Service Oil Co.* (1948), 199 Okla. 618, 189 Pac. (2d) 189; *Donovan v. Travers* (1934), 285 Mass. 167, 188 N. E. 705. In those cases there was a change in the economic conditions and seniority rights were readjusted.

There is no evidence here showing any such change which would justify an amendment of the contract of 1937. The change in this case was merely to give the former streetcar op-

erators better seniority than they had under the compromise agreement. They were in the majority in the union and arbitrarily, unfairly, and capriciously changed the contract to suit themselves. Under such facts, the courts have held the change unlawful. In *Hartley v. Brotherhood* (1938), 283 Mich. 201, 277 N. W. 885, the court in that case agreed that a union and the employer can bargain as to seniority even though an individual member might lose some of his rights, but stated (p. 207):

"A different situation might be presented had the agreement of 1932 been accomplished as a result of bad faith, arbitrary action, or fraud directed at plaintiff on the part of those responsible for its execution."

We hold that the union acted arbitrarily and without authority.

It is stated in 142 A. L. R. at page 1060:

"That seniority rights of individual members of a union under a collective-bargaining contract made between it and an employer are property rights which the court will protect in a proper case even against the action of the union, if arbitrary or otherwise clearly wrongful," and is demonstrated by *Evans v. Louisville & N. R. Co.* (1940), 191 Ga. 395, 12 S. E. (2d) 611.

*By the Court.*—Judgment affirmed.