O'Donnell and others, Appellants, v. Pabst Brewing
Company and others, Respondents.

*January 10—February 7, 1961.*

For the appellants there was a brief and oral argument by *Milton S. Padway* of Milwaukee.

For the respondent Pabst Brewing Company there was a brief by *Brady, Tyrrell & Bruce* of Milwaukee, attorneys, and *Mervin N. Bachman* of Chicago, Illinois, of counsel, and oral argument by *T. L. Tolan, Jr.,* of Milwaukee.

For the respondent Unions there was a brief by *Max Raskin* of Milwaukee, and *James C. Paradise* of Cincinnati, Ohio, and *Raskin, Zubrensky & Padden* of Milwaukee, and oral argument by *Mr. Max Raskin* and *Mr. Paradise*.

MARTIN, C. J. Appellants' first contention is that under the June, 1957, contract their seniority rights were established during the life of the contract and could not be changed in mid-term. They cite the contract provision that "no other subjects will be opened for bargaining during its term or until an extension or renewal of this contract shall be opened for bargaining," and the termination clause which provided for automatic renewal on June 1, 1959, unless either party gave notice to the other, sixty days prior thereto, of its desire to terminate or modify the agreement. The purpose of the so-called waiver-of-bargaining provision is to prevent either party to the contract from forcing the other to bargain during the term of the contract.

As pointed out by the respondent employer, in cases where it has been contended that a labor contract may not be modified during its term, even when the parties agree to do so, the argument has been rejected. In *Leeder v. Cities Service Oil Co.* (1948), 199 Okla. 618, 620, 189 Pac. (2d) 189, 191, the court upheld an amendment to a seniority list during the term of the contract after the acquisition of new plants by the employer. In discussing the waiver-of-bargaining clause, the court said:

"It is manifest that this is a limitation only upon the right of either to seek to impair the contract without the consent of the other, because it is well established that both parties to a contract can by mutual agreement alter or annul the contract unless the power so to do is restricted by law."

A labor contract, like any other contract, may be amended during its term by mutual agreement of the parties. Seniority rights present no exception to the rule. Such a right is a valuable "property" right but it is "fundamentally and wholly contractual and it does not arise from mere employment and is not an inherent, natural, or constitutional right." *Colbert*

*v. Brotherhood of Railroad Trainmen* (9th Cir. 1953), 206 Fed. (2d) 9, 13 (certiorari denied, 346 U. S. 931, 74 Sup. Ct. 320, 98 L. Ed. 422).

Appellants rely on certain language in *Belanger v. Local Division No. 1128* (1949), 254 Wis. 344, 354, 36 N. W. (2d) 414. It should be pointed out that the original seniority list involved in that case was a private agreement between bus drivers and former streetcar operators. The labor union thereafter formed by the employees accepted said list, but sometime later dissatisfaction arose with regard to it and the matter was submitted to arbitration. The employer agreed to negotiations on the subject and a new seniority list was prepared by the union. This court held the new list void, stating that there had been no economic changes which would justify an amendment of the original agreement, and that:

"The change in this case was merely to give the former streetcar operators better seniority than they had under the compromise agreement. They were in the majority in the union and arbitrarily, unfairly, and capriciously changed the contract to suit themselves. Under such facts, the courts have held the change unlawful."

There is nothing in that case to indicate that had there been reason to change the list and had it been accomplished fairly and in good faith, this court would not have considered it valid. Indeed, in the second *Belanger Case* (1950), 256 Wis. 479, 483, 41 N. W. (2d) 607, it was said, referring to the first opinion:

". . . it was not then determined by either the trial court or this court on the first appeal that the seniority rights under the 1937 agreement cannot be changed by legitimate and valid negotiations and action by the union and the bus company. The rule that a seniority agreement can be changed by such negotiations and action, in the absence of any arbitrary or capricious action on the part of the em-

ployer and labor union has been applied . . . [citing cases]."

As has been observed in many cases, the collective-bargaining process is a continuous one—

"It is of the essence of collective bargaining that it is a continuous process. Neither the conditions to which it addresses itself nor the benefits to be secured by it remain static." *Aeronautical Industrial District Lodge 727 v. Campbell* (1949), 337 U. S. 521, 525, 69 Sup. Ct. 1287, 93 L. Ed. 1513.

Here a condition developed within the term of the bargaining agreement which was not contemplated by the parties when they negotiated it. The Pabst and Blatz breweries merged. These circumstances compelled a new agreement on seniority. Both Blatz and Pabst were signatories to the June 1, 1957, contract. That agreement was by its terms binding upon the employers and their successors. In the February 17, 1959, agreement which provided for consolidation of the Pabst and Blatz seniority lists, Pabst Brewing Company acknowledged that on the effective date thereof, February 23, 1959, it "is the successor to Blatz Brewing Company . . . under and pursuant to the terms of the current collective-bargaining agreement."

As such successor, Pabst succeeded to all the obligations of Blatz under the agreement. As a result of the merger, the Blatz and Pabst employees were all employees of Pabst and all were entitled to seniority rights based upon their length of service with the respective employers. There is sound reasoning in the view that the consolidation of the two lists was no more than a mere codification of the existing rights of all the employees and that none of the employees were aggrieved, because their rights were based upon length of service from their last date of hire by either Pabst or Blatz, as the case might be. By the same token, Pabst, as the suc-

cessor company, would not have been honoring its obligations to the former Blatz employees under the contract by placing them at the foot of the Pabst seniority list simply as new employees of Pabst on the date of the merger. And the union, confronted with the problem of the transfer and placement of Blatz employees at the Pabst plant, had the duty, as the representative of all the employees, of preserving the seniority rights of the former Blatz employees as well as those of Pabst, in the interests of the membership as a whole. In any event, integration of the two seniority lists constituted a fair interpretation of the intention of the parties under the 1957 contract. There is nothing to show it was arbitrary or capricious.

Appellants complain that the January 18, 1959, vote on the recommendation to consolidate the seniority lists violated the constitution of the international union which provides that, "Ratification of contracts shall be by a majority of the votes cast by all the members affected by the contract." They argue that under this provision only the Pabst employees should have voted and, of those, even the employees on withdrawal cards should be permitted to vote.

The union constitution grants the local the right, in its discretion, to submit "working conditions as distinguished from other matters, which affect the employees in a particular department" for approval "by the members who are affected by such working conditions." Thus the union's discretion to submit a question to a portion of its membership is restricted to matters affecting a "particular department." The question submitted on January 18, 1959, affected all production departments of the breweries.

Appellants' argument seems to be that the seniority rights of only Pabst employees were going to be affected. Surely those of the former Blatz employees would be equally af-

fected; and Blatz employees outnumbered Pabst employees 940 to 925. The union took the view that all members covered by the contract, not just those in the Pabst and Blatz plants, were affected by the question of seniority presented by the Pabst-Blatz merger. In our opinion, there is ample justification for that view.

There is just one local, of which all the brewery production workers are members, and there is just one bargaining agreement, a single document signed by all the Milwaukee breweries and covering all the employees. The Pabst-Blatz merger is the first such occurrence in Milwaukee. There may be others. At least one other is apparently about to occur. The problem of seniority rights brought about by such a merger therefore presented a policy question of general interest to the entire local union membership, and its resolution by the entire membership would establish a precedent for the handling of similar problems in the future.

A number of contract provisions related to seniority have intercompany application and affect the rights of employees when they transfer from the plant of one employer to that of another. For instance, one such provision states that an employee who has completed his probationary period with any brewery must be classified as a regular employee upon his employment with another. There is also a provision that an employee having group insurance coverage in the plant of one employer, upon termination or layoff and re-employment by another employer, shall be entitled to immediate insurance coverage. Still another provides for the continued maintenance of the Milwaukee Brewery Workers Pension Plan by all the signatory employers. Under such circumstances it is reasonable that the disposition of the seniority problem arising from the Pabst-Blatz merger would affect all the union members in all the plants covered by the agreement.

This new economic condition caused by this merger, affected all members and required action by the union as to matters of seniority rights.

Another important aspect of the situation is pointed up by what happened in the first *Belanger Case, supra,* where the question on the change of seniority was submitted to a membership where those seeking to better their own position were in the majority. To submit the question to only Pabst employees would have been unfair to the former Blatz employees; it would undoubtedly have resulted in a vote to give themselves preference. To limit the vote to Pabst and Blatz employees would have given the Blatz employees the advantage, since they were in the majority and could be expected to express their own self-interest. Aside from the fact that submission of the question to the entire union membership was justified by the fact that resolution of the problem was something all the members would have to live with, a vote by all would be much more likely to reflect an objective view than either of the alternatives mentioned.

Appellants say employees on withdrawal cards should have been permitted to vote. They concede, however, that under the constitution and by-laws of the union such employees had no right to vote. They do not argue that the rule is invalid or that there is anything in the record to indicate it is arbitrary, unreasonable, or against public policy.

The contention is also made that failure of the local union's contract committee to sign the February 17th agreement was a violation of the local by-laws. The record shows that the contract committee had nothing to do with the formulation or negotiation of that agreement; the membership approved it and the union carried out the mandate of the members in its negotiations with the employer. We cannot see that the failure of said committee to sign the agreement either affected the validity of the agreement or prejudiced the interests of the appellants.

It is further contended that the executive board was without authority to recommend consolidation of the seniority lists; that the recommendation violated the international constitution in that it constituted a breach of contract. There was no breach of contract. The by-laws of the union expressly empower the executive board to "make recommendations to the local union . . . for the general welfare of the union." It was not only within the authority of the board to act as it did; it was its duty to act with respect to the problem in the interests of all its members.

The over-all consideration in this case is whether the bargaining which resulted in the February 17th agreement was in good faith and reached a fair and reasonable solution of the merger problem. Appellants have failed to show that the changes affected by that agreement were the result of arbitrary, unreasonable, or capricious conduct on the part of either the union or the employer.

The "damages" suffered by the individual appellants (having been employed at both Blatz and Pabst) were occasioned, in a general sense, by choosing to retain seniority at Pabst rather than Blatz. Only two alternatives, they argue, would be fair under the 1957 contract—either the Blatz employees should be placed at the foot of the Pabst seniority list, or their seniority should be determined as dating from February 23, 1959, as new employees of Pabst. The record shows that there were men on the Blatz list hired as early as 1912 who, under the system suggested by appellants, would have less seniority than men hired at Pabst in 1956.

The consolidation of the two lists as accomplished by the February 17th agreement gave each employee, whether Blatz or Pabst, a position on the new list where his last date of hire placed him with relation to the respective hiring dates of the other Blatz-Pabst employees. The merger of the two companies occasioned the transfer of all Blatz production operations to the Pabst plant. In practical effect this meant

more jobs at the Pabst plant than previously but not enough for an employment force now about double what it had been. As graphically stated by the Pennsylvania court, dealing with a seniority question in *Grand Lodge, etc., v. Girard Lodge No. 100* (1956), 384 Pa. 248, 259, 120 Atl. (2d) 523, 528:

"When there are only five apples for six people, it is impossible for each person to receive a whole apple."

In such a situation no solution to the problem will obtain satisfaction for all who are represented. As stated in *Ford Motor Co. v. Huffman* (1953), 345 U. S. 330, 338, 73 Sup. Ct. 681, 97 L. Ed. 1048:

"A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion."

Actually, appellants make no charge in their argument here of bad faith, arbitrary, discriminatory, or capricious conduct on the part of respondents in agreeing on the integrated seniority list. Although such charges were made in the amended complaint, there was no proof on the trial. In our opinion, the respondents in good faith and with honest purpose sought a solution to the problem which would be fair and reasonable for all. The hardships suffered by some were not the result of arbitrary or discriminatory treatment by respondents but were inherent in the very circumstances from which the problem arose.

There is no merit in appellants' argument that there never was any conscientious arm's-length bargaining between the union and the employer concerning the merged seniority lists. The evidence shows that the parties negotiated for almost a month before arriving at the agreement of February

17th in order to work out details on a variety of issues involving seniority. It is no criticism of the negotiations to say that the union recommendation, bearing the approval of the membership, was merely placed before the employer and accepted. It could as well be argued that its acceptance showed the company considered it a fair and reasonable solution to the problem.

*By the Court.*—Judgment affirmed.